**BEHRING INTERNATIONAL, INC.,**
Appellant/Cross-Appellee,

v.

**GREATER HOUSTON BANK,**
Appellee/Cross-Appellant,

v.

**NORWEGIAN AMERICAN LINE,**
Cross-Appellee.

No. 01–82–0135–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 20, 1983.

Rehearing Denied Dec. 15, 1983.

Charles Gregg, Timothy T. Read, Houston, for appellant/cross-appellee.

Barry L. Racusin, Houston, Stephen L. Goldberg, Houston, for Greater Houston Bank.

William H. Seele, Houston, for Norwegian American Line.

Before DOYLE, DUGGAN and WARREN, JJ.

## OPINION

WARREN, Justice.

Behring International, Inc., (Behring) plaintiff and cross defendant at trial, appeals from a take nothing judgment entered on its suit against Greater Houston Bank (GHB) for wrongful offset and conversion. GHB appeals from the parts of the judgment denying it indemnity on its cross-action against Norwegian American Lines (NAL), and denying it punitive damages on its counterclaim against Behring. The trial was to the court.

## THE PARTIES

Behring is a freight forwarder, with offices in Houston and New Orleans. GHB is a bank located in Houston. NAL is a steamship company doing business as a common carrier of freight. Nordship Agencies Inc. (Nordship), at some times material to this suit, acted as a general agent for steamship companies.

Both Behring and Nordship maintained accounts with GHB, but NAL did not. Nordship was the general agent for NAL in the Gulf Coast area before this relationship was terminated in September or October of 1977.

## THE FACTS

In the latter part of September or in early October, 1977, Behring, on behalf of its customer, Pineville Kraft Corp. (Pineville) contracted with NAL to transport certain goods from Lake Charles, Louisiana to Belfast, North Ireland, on a NAL vessel called the Topdalsfjord. Nordship was then the general agent of NAL in the gulf coast area, which includes Lake Charles, Houston, and New Orleans. On October 10, 1977, Behring received a bill of lading numbered 0309252, from Nordship which included these notations and instructions:

This is your freight invoice
No other billing issued
Please make check payable to
Nordship Agencies, Inc.
and mail to
Nordship Agencies, Inc.
P.O. Box 30652
New Orleans, La. 70130

Shortly thereafter, Behring received a written notice from NAL instructing it not to pay Nordship, but to make payment to:

Norwegian American Line
care of Norton Lilly

Norton Lilly is a general agent for several steamship companies and a competitor of Nordship.

On October 17, 1977, Behring issued its check numbered 3784, on its account at Allied Bank in Houston in the amount of $67,950.74, to the order of Norwegian America Lines, c/o Norton Lilly. Somehow, the check ended up in the possession of Nordship in New Orleans. Nordship sent the check to its Houston office and there-

after Mr. Fernandez, Nordship's Houston manager, took it to GHB, endorsed it "For Deposit Only by Nordship Agencies, Inc., as agents", and presented it to a teller with instructions to deposit it to Nordship's account at GHB. The teller, without making any inquiry, followed Mr. Fernandez' instructions. Two days later, Nordship had the funds transferred from GHB to a Chicago Bank. Shortly thereafter, Nordship filed a petition for bankruptcy. The check was transmitted from GHB to Allied Bank, which credited GHB's account, debited Behring's account, and returned the check to Behring. When Behring's comptroller noticed that the check had not been endorsed by the payee, he returned the check to Allied Bank, which then reversed the previous entries by debiting GHB's account and crediting Behring's account at Allied.

After GHB received the returned check it attempted collection from Nordship, but learned that it had filed a petition in bankruptcy. GHB then attempted to negotiate an escrow arrangement between it and Behring. After this attempt failed, it offset Behring's accounts for the amount of the check.

## THE PLEADINGS

Behring sued GHB, alleging that GHB had breached its contract of deposit and that GHB had wrongfully converted its money on deposit. GHB's answer alleged that because of negligence and fraud, Behring was estopped from recovering against GHB, that Allied Bank and Behring had conspired to defraud GHB, and that Behring had breached its contract or waived its rights under the contract.

GHB filed a counterclaim against Behring and a cross action against Allied Bank of Texas (Allied), Nordship Agencies, Inc., and Norway American Lines, (NAL) alleging a conspiracy by Behring and Allied against GHB, and gross negligence by Behring in delivering the check to Nordship. It asked for compensatory and exemplary damages against Behring and indemnity from Allied and NAL. The trial court denied relief to all parties.

The court made extensive findings of fact and conclusions of law, including these listed below.

Behring did not use ordinary care in forwarding the check to its New Orleans office for delivery and such negligence was a proximate cause of damages to Greater Houston Bank.

The delivery of the check by Behring to Nordship, its agents or employees, was negligence by Behring and a proximate cause of damages to Greater Houston Bank.

Behring's delivery of the check to Nordship substantially contributed to the making of the endorsement on the reverse thereof which reads as follows: "For Deposit Only by Nordship Agencies, Inc., as agents".

When Nordship deposited the check in its account at GHB it had apparent authority to do so.

At the time of the deposit of the check, GHB (1) gave value; and (2) took same in good faith; (3) was without notice that it was overdue or had been dishonored or of any defense against or claim to it on the part of any third party.

GHB acted in a commercially reasonable manner in accepting the check for deposit.

GHB paid the check in accordance with reasonable commercial standards.

All time material hereto, GHB acted in good faith.

GHB did have notice of the termination by Norwegian America Lines of the agency of Nordship prior to the time GHB set off the amount of the check against the accounts of Behring at GHB.

Greater Houston Bank was negligent in not making inquiry concerning the notation on the face of the check "c/o Norton Lilly, New Orleans, La." and that such negligence was a proximate cause of damages to Behring.

Behring was negligent in delivery of the check in question, and that such negligence was a proximate cause of damages to GHB.

The negligence of Behring in connection with the check in question was greater than that of GHB in connection with the check in question.

Norwegian America Lines was negligent in failing to give notice of the termination of the agency of Nordship to GHB, and that such negligence was a proximate cause of damages to GHB.

Norwegian America Lines was negligent in failing to give notice of the termination of the agency of Nordship to Behring and that such negligence was a proximate cause of damages to GHB and to Behring.

The negligence of Behring in connection with the check in question was greater than that of Norwegian America Lines.

The negligence of Behring in connection with the check in question was greater than that of Norwegian America Lines and that of GHB combined.

## CONCLUSIONS OF LAW

Behring's delivery of the check to Nordship substantially contributed to the making of the endorsement on the reverse thereof.

GHB was at all material times hereto, a holder in due course of the check.

Behring is precluded by U.C.C. Section 3.406 from asserting a question of unauthorized endorsement.

Behring's negligence precludes Behring from asserting any alleged impropriety of the endorsement.

Nordship had the apparent authority to negotiate the check on behalf of its principal, Norwegian America Lines.

Nordship had the implied authority to negotiate the check on behalf of its principal, Norwegian America Lines.

The debt owed to GHB by Behring was a mature obligation.

Behring was indebted to GHB for Behring's refusal to honor the check, in the amount of $67,950.74.

The offset effected by GHB against the account of Behring was proper.

GHB did not breach its contract of deposit with Behring when it offset Behring's account.

The negligence of GHB did not prohibit its offsetting the accounts of Behring. In 14 points of error, Behring claims the following:

Point 1. There was no evidence to support the trial court's findings that Nordship had authority to negotiate the check by endorsement on behalf of NAL.

Point 2. The trial court's findings that Nordship had authority to negotiate the check by endorsement on behalf of NAL were against the great weight of the evidence.

Point 3. The trial court erred in holding that Behring was indebted to GHB as a result of Behring's refusal to pay the check, because Behring was required to pay only NAL or a valid holder as defined by statute.

Point 4. The trial court erred in holding that Behring is precluded from asserting the unauthorized endorsement on the check, because there was insufficient evidence to support the court's finding that GHB was a holder in due course.

Point 5. There was no evidence to support the trial court's finding that GHB took the check without notice of any defense against it or claim to it on the part of any third party.

Point 6. The trial court erred in holding that Behring is precluded from asserting the unauthorized endorsement, because there was insufficient evidence to support the court's finding that GHB paid the check in accordance with the reasonable commercial standards of GHB's business.

Point 7. The trial court erred in holding that Behring is precluded from asserting the unauthorized endorsement, because there was insufficient evidence to support the court's findings that Behring was negligent in delivering the check, and that such negligence substantially contributed to the making of the endorsement by Nordship.

Point 8. There was no evidence to support the trial court's finding that Behring

was negligent in its delivery of the check in question.

Point 9. There was no evidence to support the trial court's finding that Behring's delivery of the check substantially contributed to the making of the endorsement by Nordship.

Point 10. The trial court erred in holding that the offset of funds was proper, because Behring did not owe a mature debt to GHB.

Point 11. The trial court erred in holding that GHB did not breach its contract of deposit with Behring when it offset Behring's account.

Point 12. The trial court erred in allowing GHB to assert comparative negligence as a defense to Behring's claims.

Point 13. The trial court erred in failing to award prejudgment interest to Behring.

Point 14. The trial court erred in failing to award its reasonable attorneys' fees to Behring.

In GHB's cross appeal it claims the following:

Point 1. The trial court erred in failing to hold that the cross-plaintiff, GHB, was entitled to be indemnified, saved and held harmless by cross-defendant, NAL, because the overwhelming evidence established at trial and as a matter of law supported a finding of indemnification.

Point 2. The trial court erred in failing to hold that Behring was grossly negligent in delivering or causing to be delivered to Nordship check number 3784, drawn on Allied Bank of Texas, payable to "Norwegian America c/o Norton Lilly, New Orleans, La." and that such gross negligence by Behring was a proximate cause of damages to GHB, because the overwhelming evidence established at trial and as a matter of law supported a finding of gross negligence upon the part of Behring.

Point 3. The trial court erred in failing to award exemplary or punitive damages to GHB insofar as Behring's conduct in delivering or causing to be delivered to Nordship check number 3784, drawn on Allied Bank of Texas, payable to "Norwegian America c/o Norton Lilly, New Orleans, La" constitutes gross negligence and such conduct was the proximate cause of damages to GHB.

■ In review of "no evidence" points we will consider only the evidence and inferences tending to support the verdict and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). If there is any evidence of probative force to support the trial court's findings, the findings are binding on an appellate court.

■ In our review of the insufficient evidence points, it is our duty to review the entire record. We may set aside the trial court's findings only if such findings are so against the overwhelming weight of the evidence as to be clearly and manifestly wrong or unjust. *In re Kings Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951), *Corporate Personnel Consultants v. Wynn Oil Co.,* 543 S.W.2d 746 (Tex.Civ.App.—Texarkana 1976, no writ), Calvert, "No Evidence and Insufficient Evidence Points of Error", 38 Tex.L. Rev. 360 (1960).

We sustain Behring's points of error 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, and 14.

We overrule each of GHBs three points of error.

The ultimate issue for our determination is who should bear the loss caused by Nordship's malfeasance. The most significant evidence affecting this case is that testimony showing that GHB accepted a check without the endorsement of a payee or without knowledge of a specific agreement dispensing with the necessity of such an endorsement, and without making inquiry as to the propriety of the acceptance. The evidence shows that the teller who accepted the check relied only on the fact that she was familiar with Behring's reputation and the check was "good as gold", and the fact that Nordship was a customer of the bank. Almost any inquiry would have revealed that Nordship had no authority to even possess the check, much less deposit it to its account. Mr. Fernandez, Nordship's Hous-

ton Manager, testified that he realized that Nordship had no right to the check, but that he called his superiors in New Orleans who told him to deposit it.

■ In its first two points of error Behring urges that the evidence was legally and factually insufficient to support the trial court's findings that Nordship had actual, implied, and apparent authority to negotiate the check. The agency agreement between Nordship and NAL had been terminated before November 1, 1977, the date the check was presented to GHB. The term "actual authority" denotes that authority which a principal intentionally confers upon an agent, or intentionally, or by want of ordinary care allows the agent to believe himself to possess. The term includes both express and implied authority. *Texas Pacific Coal & Oil v. Smith,* 130 S.W.2d 425 (Tex.Civ.App.—Eastland 1939, dism. judgm. correct). In the absence of express authority to act as an agent there can be no implied authority because authority is implied to enable the agent to perform the transaction or acts expressly delegated to it by the principal.

Behring also alleges that apparent authority did not exist for Nordship to deposit the check because NAL took no action which would cause GHB to reasonably suppose Nordship had this authority.

■ Apparent authority is based on the doctrine of estoppel, and one seeking to charge the principal through apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that he purports to exercise. *Chastain v. Cooper and Reed,* 152 Tex. 322, 257 S.W.2d 422 (1953); *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624 (Tex.1981). When an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent actually possessed such authority. *Cox, Inc. v. Humble Oil and Refining Co.,* 16 S.W.2d 285 (Tex.Comm'n. App.—1929, jdgmt. adopted); *Biggs, supra.*

■ One line of authority supports the proposition that apparent authority exists when the principal, by his voluntary act, places the agent in such position that a person of ordinary prudence, conversant with business usages, and the nature of a particular business, would be justified in presuming that the agent had the authority to perform the act in question. 3 Tex. Jur.3d, *Agency,* § 47; *Zenith Uniform Rental Corp. v. Preston Road Dodge, Inc.,* 435 S.W.2d 305 (Tex.Civ.App.—Dallas 1969, no writ). However, because apparent authority is a species of estoppel, GHB must show also that, with knowledge of the facts, its reliance was induced. 3 Tex.Jur.3d, *Agency,* § 51; *Mobil Oil Corp. v. Frederick,* 615 S.W.2d 323 (Tex.Civ.App.—Fort Worth 1981), *affirmed in part and reversed in part,* 621 S.W.2d 595 (Tex.1981). The matter of apparent authority is one of common law; neither maritime law nor the Texas Business & Commerce Code provides any special rules governing its inception.

■ The record contains no evidence tending to show that NAL or Behring did any act leading GHB to believe that Nordship had authority to negotiate the check in question. The check was accepted without a proper endorsement because the teller knew the check from Behring was "good as gold" and because Nordship was a customer. The findings that Nordship had implied and apparent authority to endorse the check are against the great weight and preponderance of the evidence. Appellants' first two points of error are sustained.

Behring's third point of error urges that since GHB was not a valid "holder" of the check, the trial court erred in its conclusion of law no. 10, which concluded that Behring was indebted to GHB for refusing to honor the check.

Tex.Bus. & Com.Code Ann. § 1.201(20) defines "holder" as:

> ... a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank.

Is one who accepts an order instrument payable to drawee, endorsed by one other than the drawee, a transferee or a holder?

Tex.Bus. & Com.Code Ann. § 3.202, in pertinent part, provides:

(a) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery.

Tex.Bus. & Com.Code Ann. § 3.206 provides:

(a) Negotiation is effective to transfer the instrument although the negotiation is

(1) made by an infant, a corporation exceeding its powers, or any other person without capacity; or

(2) obtained by fraud, duress or mistake of any kind; or

(3) part of an illegal transaction, or

(4) made in breach of duty.

■ A "plain meaning" construction of § 3.202, § 1.201(20), and § 3.207, Tex.Bus. & Com.Code Ann. leads to the conclusion that one who accepts an instrument in the circumstances existing in this case would not be a "holder".

There is out of state authority supporting this conclusion. In *Cohen v. Lincoln Savings Bank,* 275 N.Y. 399, 10 N.E.2d 457 (commentary in 112 A.L.R. 1424) the court held that a person cannot become a holder for value of a negotiable instrument by transfer from a person not named therein, and who has no authority to transfer it. In *Doughty-Stevens Co. v. Greene County Union Bank,* 172 Tenn. 323, 112 S.W.2d 13, it was held that a person having no authority to endorse an instrument for a payee can convey no title to the instrument by his endorsement in the name of the payee. Also see *Endlich v. Bank of Black Creek,* 200 Wis. 175, 227 N.W. 866.

■ We hold that GHB was not a holder of the instrument in question.

Behring's fourth and fifth points of error complain of the trial court's finding that GHB was a holder in due course, and assert that the evidence is insufficient, and alternatively, that there is no evidence to support the finding.

■ As previously stated, the instrument in question was accepted by GHB without the endorsement of the payee and from one who had no authority to endorse the instrument. Any diligent inquiry by the teller would have revealed that Nordship had no authority to negotiate the check. GHB's teller had actual knowledge that the check was not endorsed by the payee; she had no knowledge of any prior agency relationship between NAL and Nordship. As a matter of law, GHB is not a holder in due course because it did not take the instrument without notice of any defense against or claim to the instrument. Tex.Bus. & Com.Code Ann. § 3.302. At least two Texas cases hold that one taking an instrument without a payee's endorsement is not a holder in due course.

In *American Motors Acceptance Corp. v. Heckerman,* 332 S.W.2d 345 (Tex.Civ.App. —El Paso 1960, writ dismissed), William Edward Whitten was the owner and operator of a business named Fashion Plate. He was also an officer of a corporation named Fashion Plate Wares, Inc., which had its principal place of business at the same address as the proprietorship, Fashion Plate. The appellee, Heckerman executed a note payable to Fashion Plate. The appellant, American Motors Acceptance Corp., purchased the note from Fashion Plate Wares, Inc. The note was indorsed "The Fashion Plate, Inc., by William Edward Whitten". Fashion Plate, Inc., was a Missouri corporation, authorized to do business in Texas, but had no connection with the transactions involved in that suit. The court held that since the endorsement was not that of the payee, the plaintiff transferee was not a holder in due course. See also *First State Bank of Three Rivers v. Petrucha,* 38 S.W.2d 138 (Tex.Civ.App.—San Antonio 1931, writ dism'd).

Behring's fourth and fifth points of error are sustained.

We also sustain Behring's sixth point of error alleging that there was insufficient evidence to support the court's finding that GHB paid the check in accordance with reasonable commercial standards of GHB's business.

■ Although there is evidence that some shipping agents were allowed to deposit checks made to a drawee-principal in the agent's account, and that this practice was in accordance with reasonable commercial standards, we do not consider this evidence sufficient to support a finding that GHB paid the check in accordance with the reasonable commercial standards of GHB's business which is banking. There was no evidence that Behring ever allowed an agent to deposit a check payable to Behring in its agent's account, and no evidence that the teller knew of any principal-agent relationship between Nordship and NAL. There was, at most, only a scintilla of evidence that allowing a possessor of a check to endorse it with its name rather than that of payee and then depositing the proceeds to the endorser's account was a reasonable commercial standard in the banking industry.

In its seventh, eighth, and ninth points of error, Behring complains of the trial court's findings that Behring was negligent in delivering the check to Nordship and that this negligence substantially contributed to the making of the endorsement on the reverse side of the check.

■ There was no evidence adduced establishing how the check in question came into Nordship's possession. There was testimony that it could have been delivered to Nordship by mistake or that it could have been taken out of a Behring "pickup bin". Assuming that the court found that Behring's procedure for the handling of checks was lax, and thus negligent, that alone would not satisfy the requirement under § 3.406 that the negligence "substantially contribute" to the making of an unauthorized signature. There is respectable au-

thority holding that the delivery of a check to one other than the payee does not necessarily constitute negligence precluding the maker from asserting lack of authority against one who pays the check in good faith. *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83 (Mo.App.1976). An exception to the rule would no doubt exist when the person to whom the check was delivered was known by the drawer to have previously committed breaches of trust, and therefore could be expected to breach the present trust. There is no evidence that such a situation existed in our case. Even if it had been proved that an employee had mistakenly placed the check in an envelope addressed to Nordship, there is no evidence that Behring should have expected that employees of Nordship would commit a crime by knowingly and intentionally misappropriating the proceeds from the check. There was insufficient evidence to support a finding that Behring's negligence substantially contributed to the wrongful endorsement made by Nordship, or to the loss sustained. Appellants' seventh and eighth points of error are overruled, and its ninth point of error is sustained.

In points of error ten and eleven, Behring complains of the trial court's findings that the offsets of its accounts by GHB did not breach its contract of deposit. We sustain both of these points of error.

Tex.Bus. & Com.Code § 4.401 states when a bank may charge a customer's account. It provides:

(a) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft.

(b) A bank which in good faith makes payment to a holder may charge the indicated account of its customer according to

(1) the original tenor of his altered item; or

(2) the tenor of his completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper.

Bearing in mind that GHB was not the drawee bank, none of the provisions of § 4.401 authorized GHB to offset Behring's accounts. Although there may have been a dispute between Behring and GHB as to who should bear the loss, that would not authorize an offset. An offset is not authorized unless there is a mature or past due debt owed by the depositor to the bank. *McCollum v. Parkdale State Bank,* 566 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1978, no writ). An offset is not authorized if the debt is only contingent. *Elizarraras v. Bank of El Paso,* 631 F.2d 366 (5th Cir. 1980).

We hold that GHB breached its contract of deposit with Behring because the alleged debt was not just, and even if had it been just, it was not mature; therefore, the offset was not one allowable under § 4.401.

Behring's twelfth point of error, alleging that the court erred in allowing GHB to assert comparative negligence as a defense to Behring's claims, is sustained. Behring's suit was for breach of contract and conversion, rather than negligence. The rights of the parties must be determined by the rules stated in § 3.406 rather than by common law negligence. Comparative negligence is therefore inapplicable. This point of error is sustained.

Behring's thirteenth and fourteenth points of error complain of the court's failure to allow it attorney's fees and prejudgment interest. Since the court allowed Behring no recovery on its primary suit, it could allow neither attorney's fees nor prejudgment interest. As we have determined that Behring was entitled to recover on its claim for breach of contract, it now becomes entitled to recover attorney's fees under Tex.Rev.Civ.Stat. art. 2226 (Vernon 1964). Although there was undisputed testimony as to the reasonable fee for services performed by Behring's attorneys, the question of the appropriate amount to be awarded was for the trial court, and may not be determined by an appellate court. Therefore, we must remand this severable portion of this case to the trial court so that it may determine the amount of attorney's fees to be awarded.

We also hold that on a retrial of the issue of attorney's fees the trial court should also hear testimony and determine an appropriate rate of prejudgment interest.

The facts are such that the trial court may elect to fix the prejudgment interest rate by using the equitable principles enunciated in *Phillips Petroleum Co. v. Adams,* 513 F.2d 355 (5th Cir.1975), and *Phillips Petroleum Co. v. Stahl,* 569 S.W.2d 480 (Tex.1978) or by using the statutory method as provided in Tex.Rev.Civ.Stat.Ann. art. 5069–1 (Vernon 1981).

### THE CROSS APPEALS OF GHB AND NAL

GHB's cross appeal complains of the trial court's failing to find that it was entitled to indemnification from NAL, in failing to find that Behring was grossly negligent, and in failing to award punitive damages against Behring. Each of these points of error is overruled.

The trial court found that NAL was negligent in failing to give notice of the termination of the agency of Nordship to GHB. There was no evidence to support this finding. There was no evidence that NAL knew of a business relationship between GHB and Nordship, or even if it did, whether it had a duty, in absence of special circumstances, to notify GHB of the agency termination. Further, there was evidence that GHB had in its possession a magazine which contained a notice that Norton Lilly had been appointed agent for Nordship, and that it relied on this magazine for agency notices.

NAL's cross points nos. 1, 2, 3, and 4, alleging that there was no evidence or insufficient evidence to support a finding of negligence to notify GHB of the agency termination, are sustained. Since the evidence does not support a finding of negligence against NAL, GHB would not be entitled to contribution from NAL. Also, since we have previously determined that

Behring was guilty of no negligence which materially contributed to the damage sustained by GHB, GHB would not be entitled to punitive damages.

That portion of the judgment denying appellant Behring recovery for the amount equal to the offset taken by Greater Houston Bank is reversed, and judgment is rendered in favor of Behring International, Inc., in the amount of $67,950.74; that portion of the cause of action pertaining to attorneys' fees and to prejudgment interest on the $67,950.74 is severed, and these issues are remanded to the trial court for its determination of both the amount of reasonable attorney's fees incurred by Behring International, Inc., and the appropriate rate of prejudgment interest to be awarded.

The judgment in all other things is affirmed.