Leath v. Beverly Enterprises 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-048-CV

     BEVERLY ENTERPRISES OF TEXAS, INC., ET AL.,
                                                                                              Appellants
     v.

     GWEN LEATH,
                                                                                              Appellee
 

From the 249th District Court
Johnson County, Texas
Trial Court # 249-464-89
                                                                                                    

O P I N I O N
                                                                                                    

      Gwen Leath was employed by Beverly Enterprises of Texas, Inc. as a food-service employee
at its Red River Haven Nursing Home in Bogota, Texas. She fell in a hallway at the nursing home
and hit her head on a wall railing. Because Beverly carried no workers' compensation insurance,
Leath sued for ordinary negligence and, claiming that Beverly was also grossly negligent, for
punitive damages. A jury found that Beverly's failure to furnish Leath a reasonably safe place to
work proximately caused the injuries and awarded her $158,366.16. It also awarded her $500,000
in punitive damages. 
      Beverly asserts that the court lacked jurisdiction because Leath's claims were preempted by
a federal statute. It also contends that no evidence, or insufficient evidence, supports the findings
of future-medical expenses and gross negligence, that the court erred in failing to bifurcate the trial
and in admitting evidence of its net worth, and that the punitive damages are excessive under
section 41.007 of the Civil Practice and Remedies Code. We will overrule all points and affirm
the judgment.
PREEMPTION
      Beverly contends in point one that Leath's action in state court is preempted by the Employee
Retirement Income Security Act (ERISA). See 29 U.S.C.A. § 1144(a) (West 1985). Actions
which do not "relate to" any employee-benefit plan are not preempted. Ingersoll-Rand Co. v.
McClendon, 498 U.S. ———; 111 S.Ct. 478, 482-83, 112 L.Ed.2d 474 (1990). Since 1917 when
the legislature adopted the workers' compensation law, an injured employee has had no right to
bring a common-law negligence action against the employer unless the employer elected not to
carry compensation insurance. Tex. Rev. Civ. Stat. Ann. art. 8308, §§ 3.03, 3.04 (Vernon
Pamphlet 1992), Act of March 28, 1917, 35th Leg. R.S., Ch. 103, §§ 1, 4, 1917 Tex. Gen. Laws
269. When the employer so elected, however, the law has always expressly authorized a
negligence suit and has enhanced the right by precluding certain defenses. Id. Here, Leath has
exercised her common-law rights; thus, we conclude that the rights she asserted did not "relate
to" any ERISA plan. See Ingersoll-Rand, 498 U.S. at ———, 111 S.Ct. at 482-83. We overrule
point one.
NO-EVIDENCE AND INSUFFICIENT-EVIDENCE STANDARDS OF REVIEW
      In reviewing a "no-evidence" point, we must consider only the evidence and inferences
tending to support the verdict and disregard all evidence and inferences to the contrary. See Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). If there is any evidence of probative force to
support a finding, that finding is binding on an appellate court. Behring Intern. v. Greater
Houston Bank, 662 S.W.2d 642, 648 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). When
the complaining party challenges the legal sufficiency of the evidence on a finding that favors the
party who had the burden of proof, the reviewing court must sustain the finding if, considering
only that evidence and the inferences which support the finding in the light most favorable to the
finding and disregarding evidence and inferences to the contrary, any probative evidence supports
it. See Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981); Miller v. Riata
Cadillac Company, 517 S.W.2d 773, 777 (Tex. 1974).
      When the complaining party challenges the factual sufficiency of the evidence on a finding
that favors the party who had the burden of proof, the reviewing court must sustain the finding
unless all the evidence, both for and against the finding, is so weak or insufficient that the finding
is manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
GROSS NEGLIGENCE AND THE AWARD OF PUNITIVE DAMAGES
      In point two, Beverly asserts that no evidence exists to support either the jury's finding of
gross negligence or the award of punitive damages. In point three, it asserts that the evidence was
insufficient to support the finding and award.
      We overlay our statement of the standard of review of the no-evidence point with the
recognition that a finding of gross negligence should be sustained if there is "some evidence of
probative value" that the conduct complained of was reckless, wanton, and grossly negligent
conduct. International Armament Corp. v. King, 686 S.W.2d 595, 597 (Tex. 1985); Burk Royalty
Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981). Ordinary negligence is elevated into gross
negligence by the mental state of the party whose conduct is questioned. Id. Thus, we must
determine if the record contains some evidence of probative value that Beverly was consciously
indifferent to Leath's rights, welfare, and safety. See id. Beverly's mental state may be inferred
from actions—Leath need not prove its subjective state of mind by direct evidence. See Williams
v. Steves Industries, Inc., 699 S.W.2d 570, 573 (Tex. 1985). We test conscious indifference by
Beverly's conduct: Did its acts and the surrounding circumstances demonstrate that it knew about
the peril and did not care? See id.; International Armament, 686 S.W.2d at 597. 
      The relevant evidence is derived from the testimony of Leath, Sharon Adams (a charge nurse),
and Naomi Smith (the dietary-services manager for the nursing home). These witnesses said that
a dishwasher in the spray room leaked, that a pipe under a sink also leaked, that water had
continually accumulated in the spray room when the dishes were washed, and that the water ran
into the adjoining hall. Leath testified that on November 11, 1988, she slipped and fell in a
hallway that led from the kitchen spray area to the patients' dining room. Beverly's routine
required that Leath carry silverware from the spray room and down the hallway to the dining room
before the hallway was mopped. Adams said water accumulated in the hallway every day. Smith
said that water accumulated three times a day and that the dishwasher had leaked so long that the
tiles under it were warped. Leath said that she told Smith, her supervisor, about the leaks. Smith
and Adams said that management of the nursing home had been notified about the condition of the
dishwasher and leaky pipe before Leath's fall. Smith said that mats were placed in the kitchen
to prevent falls, but none were placed in the hallway where Leath fell because they cost between
$200 and $400.
      We find that this testimony constitutes some evidence of probative value on which the jury
could have based both its finding that Beverly was grossly negligent and its award of punitive
damages. Beverly knew that water accumulated on the floor, knew the source of the water, and
knew how often and how long it stayed on the floor. The jury could have reasonably concluded
that Beverly's acts and the surrounding circumstances demonstrated conscious indifference to
Leath's rights, welfare, and safety.
      Section 41.001(5) of the Civil Practice and Remedies Code states:
'Gross negligence' means more than momentary thoughtlessness, inadvertence, or error of
judgment. It means such an entire want of care as to establish that the act or omission was
the result of actual conscious indifference to the rights, safety, or welfare of the person
affected.
Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (Vernon Supp. 1992). The court used this
definition in its charge to the jury. Beverly argues that the 1987 adoption of section 41.001(5),
including the words "establish" and "actual," established a new evidentiary standard "by which
courts are to review gross negligence findings." Id. Although it cites Terry v. Garcia in support
of its position, its reliance is misplaced. See Terry v. Garcia, 800 S.W.2d 854, 856 (Tex.
App.—San Antonio 1990, writ denied). We believe that the standard adopted by the Supreme
Court prior to the enactment of section 41.001 is the correct standard. See Tex. Civ. Prac. &
Rem. Code Ann. § 41.001(5) (Vernon Supp. 1992); Burk Royalty, 616 S.W.2d at 922.
      We must sustain the findings of gross negligence and the award of punitive damages unless
all the evidence, both for and against the findings, is so weak or insufficient that the findings are
manifestly unjust. See Cain, 709 S.W.2d at 176. Based on the evidence described above, we do
not believe that the findings are manifestly unjust. See id.
      We overrule points two and three.
FUTURE MEDICAL EXPENSES
      The jury awarded Leath $10,000 for future medical expenses. In points nine and ten, Beverly
contends that no evidence, or insufficient evidence, supports this award. It says, first, that the
record contains no evidence that Leath will, in reasonable probability, require medical treatment
or incur medical expenses in the future, and second, that the overwhelming weight of the evidence
established that she had "received the medical treatment necessary to correct the injury and that
[she] was much better."
      An award of future medical expenses is primarily a matter for the jury. Hughett v. Dwyre,
624 S.W.2d 401, 405 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.). No precise evidence is
required. Id. Such an award may be based on the nature of the injuries, the medical care rendered
in the past, and the condition of the injured party at the time of trial. Id. Testimony of a
"reasonable medical probability" by a medical expert is not a prerequisite to a recovery for future
medical expenses. Id. If there is any probative evidence which supports the finding of future
medical expenses, then the award must be upheld. Id. at 406.
      Leath, aged 56, testified that after the fall she saw Dr. E. E. Brooks, who made x-rays and
gave her pain medication. She saw him once a week for three months, during which she had pain
in her left shoulder, neck, arm, and hand. After three months, Dr. Brooks referred her to Dr.
Jack Elder, an orthopedic surgeon in Longview. Dr. Elder ran a magnetic resonance imaging test
and referred her to Dr. Benjamin Guerra. In December 1988 Dr. Guerra ran a myelogram and
computer-assisted x-rays and told her she had four ruptured disks. He performed surgery in
January, and her pain subsided. The pain later increased to the pre-surgery level. Dr. Guerra
continued to prescribe medication, but in August 1989, he referred her to Dr. John White, who
used "trigger-point injections" six or seven times to relieve her pain. Dr. White also hospitalized
her for "catheter surgery" twice. He then referred her back to Dr. Guerra, who performed
additional surgery in April 1990. Dr. Guerra said that he continued her anti-inflammatory and
pain medications after the April surgery. Leath testified that the second surgery "did not return
[her] to normal health," that she had not returned to work as of the trial, and that she still had
shoulder, neck, and arm pain. J. C. Leath, her husband, testified that she was better after the
second surgery, but was still restricted from raising her arms over her head and from lifting
anything heavy. He said that she had the most difficulty sweeping and mopping and that she had
to give up gardening.
      We hold that this testimony constitutes legally and factually sufficient evidence to support the
award of future medical expenses. See id. at 405. We overrule points nine and ten.
BIFURCATED TRIAL AND EVIDENCE OF NET WORTH
      Beverly's point eight asserts that the court erred by failing to grant its request for a bifurcated
trial and in admitting evidence of its net worth before the jury had found it guilty of gross
negligence. Beverly concedes that Texas has not adopted the "Wyoming Plan"— which mandates
a separate hearing on the amount of punitive damages when prima facie evidence justifying
punitive damages is produced at trial and the jury determines that it intends to award such
damages—but urges us to adopt it now. We decline. In the alternative, Beverly asserts that issues
related to gross negligence and punitive damages are proper subjects of a separate trial under Rule
174(b) and that the court abused its discretion in refusing to grant a separate trial. See Tex. R.
Civ. P. 174(b).
      Abuse of discretion is determined by whether the court acted without reference to any guiding
principles. Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Stated
another way: Was the act of the court arbitrary or unreasonable? Smithson v. Cessna Aircraft Co.,
665 S.W.2d 439, 443 (Tex. 1984); Landry v. Travelers Insurance Company, 458 S.W.2d 649, 651
(Tex. 1970). The mere fact that an appellate court might have decided a matter within the trial
judge's discretion in a different manner does not demonstrate that an abuse of discretion has
occurred. Southwestern Bell Telephone Company v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965);
Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).
      Rule 174 authorizes, but does not require, a court to grant a separate trial on any claim or
separate issue to "further convenience" or "avoid prejudice." Tex. R. Civ. P. 174(b); Miller v.
O'Neill, 775 S.W.2d 56, 59 (Tex. App.—Houston [1st Dist.] 1989, no writ). Unless the
Wyoming or a similar plan is mandated, courts will continue to determine on a case-by-case basis
whether to grant a separate hearing on the amount of punitive damages which are to be awarded. 
See Miller, 775 S.W.2d at 59. Based on the record, we cannot say that the court abused its
discretion in refusing to grant Beverly's request for a separate trial. See Johnson v. State Farm
Mutual Auto Insurance, 762 S.W.2d 267, 269 (Tex. App.—San Antonio 1988, writ denied). We
overrule point eight.
EXCESSIVE PUNITIVE DAMAGES
      The jury awarded Leath $500,000 in punitive damages. Although the damages for past and
future medical care, loss of earnings, physical pain and mental anguish, and physical impairment
awarded by the jury totalled $158,366.16, the judgment awarded only $100,927.70 for those
damages because Leath had agreed that Beverly was entitled to an offset for amounts paid to her
or on her behalf before trial. In points four and five, Beverly asserts that the punitive damages
are excessive and that a remittitur should be ordered. Specifically, it says that section 41.007 of
the Civil Practice and Remedies Code limits the amount of punitive damages to four times the
amount of the "actual damages" and that the court awarded "actual damages" of $100,927.70. See
Tex. Civ. Prac. & Rem. Code Ann. § 41.007 (Vernon Supp. 1992). Leath counters that a
limitation of damages is an affirmative defense that Beverly did not plead and, thus, waived.
      We believe that the term "actual damages" used in section 41.007 refers to the total amount
of damages found by the jury. See id. Pretrial payments do not reduce the amount of "actual
damages" suffered by an injured party; they simply reduce the amount of damages which are
recoverable by that party after a trial. We do not believe that the legislature intended that
payments or lack of payments before trial should enhance or reduce a claimant's right to punitive
damages under the statute. Because the jury's award of $500,000 in punitive damages did not
exceed four times its award of actual damages, the court's judgment did not violate the terms of
section 41.007. See id. We do not reach the question of whether the limitation imposed by
section 41.007 is an affirmative defense which must be pleaded.
      Beverly also contends that the award of $500,000 in punitive damages is excessive and the
result of passion and prejudice. The amount of an award of punitive damages rests largely in the
discretion of the jury. Miles Homes Div., Insilco Corp. v. Smith, 790 S.W.2d 382, 385 (Tex.
App.—Beaumont 1990, writ denied). We have held that whether an award of punitive damages
is excessive is reviewed by considering: (1) the nature of the wrong, (2) the character of the
offending conduct, (3) the degree of culpability of the person against whom the damages were
awarded, (4) the relative situation and sensibilities of the parties, and (5) the extent to which the
conduct offends a public sense of justice and propriety. See John Deere Co. v. May, 773 S.W.2d
369, 377-78 (Tex. App.—Waco 1989, writ denied). Because evidence of net worth is admissible
for the jury's consideration, we add: (6) the net worth of the defendant. See Lunsford v. Morris,
746 S.W.2d 471, 473 (Tex. 1988).
      Punitive damages are not necessarily multiples of actual damages. Miles Homes, 790 S.W.2d
at 385. Here, the punitive-damages award is within the amount authorized by the statute, and the
ratio is not so great as to render it excessive in light of the facts of the case. See id.; Tex. Civ.
Prac. & Rem. Code Ann. § 41.007 (Vernon Supp. 1992). We overrule points four and five.
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 22, 1992
Publish by order of May 20, 1992