Opinion issued April 14, 2005



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01020-CV




THE CADLE COMPANY, Appellant

V.

JAMES L. MORGAN, Appellee




On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2003-07378




MEMORANDUM OPINION
          The issue in this case is whether the Cadle Company [“Cadle”] is bound by a
settlement negotiated by its outside counsel, Brett Lanier, with a judgment debtor,
James Morgan. In five related issues on appeal, Cadle contends the trial court erred
in finding that Lanier possessed the authority, either actual or apparent, to negotiate
the settlement with Morgan. In a sixth issue, Cadle challenges the damages awarded
to Morgan.
          BACKGROUND
          In November 1987, Park 45 National Banks obtained a default judgment
against Morgan in the amount of $31,355.10, plus $5,265 in attorneys fees. In 1990,
Cadle purchased the right to the default judgment from the FDIC. 
          In 1992, 1995, and 1996, Cadle employees sent Morgan a series of letters
offering to settle the default judgment for a percentage of the $34,907.10 that the
letters claimed was now owed on the judgment. In 1999, after Cadle’s attempts to
settle the claim with Morgan failed, a Cadle employee called Morgan and told him
to expect to hear from Cadle’s attorney regarding the default judgment claim.
          In March 2001, Laura Harkless, a Cadle employee who was responsible for
retaining and supervising outside counsel to assist in Cadle’s debt collecting efforts,
hired Brett Lanier to collect Morgan’s debt. Harkless obtained Lanier’s name from
a book entitled Bankers Collection Lawyers. Harkless had never met Lanier, Cadle
had never done business with Lanier, and Harkless did not check any of Lanier’s
references before hiring him.
          After hiring Lanier, Harkless sent him certain confidential information relating
to the collection of the Morgan debt. Thereafter, Harkless did not have any contact
with Lanier, even though Cadle’s own rules for supervising outside counsel require
that outside counsel provide written status reports on their case every 60 days. 
Harkless testified that she tried to call Lanier several times, but was unable to reach
him because his telephone had been disconnected.
          Harkless was aware that Lanier’s telephone had been disconnected and that she
had no way to contact him, but she never relayed this information to Morgan or his
attorney even though she knew Morgan’s telephone number and had spoken with him
previously.
          In February and March of 2002, Lanier contacted Morgan regarding the
collection of the default judgment. Morgan told Lanier to contact his attorney,
Michael Landrum. On March 18, 2002, Lanier sent a letter to Landrum, in which
Lanier stated, “My client is now calling me every day. I have some settlement
authority, but only if Mr. Morgan acts quickly.” Lanier communicated an offer to
settle the judgment for $20,000. When Morgan countered at $15,000, Lanier
confirmed to Landrum that the judgment would be settled when Morgan made a
$15,000 wire transfer to Lanier’s account for Cadle, which Morgan did.
          A few months after Morgan paid Lanier, Morgan received a telephone call
from Harkless regarding the money he owed Cadle. Morgan told Harkless that he did
not owe Cadle, and then Harkless asked Morgan if he knew how she could get in
touch with Lanier, her own attorney.
          After learning of the settlement from Morgan, Harkless sent two letters to
Lanier demanding that he turn over the settlement funds immediately. In neither
letter did Harkless claim that the settlement was unauthorized; she simply demanded
that Lanier give the money to Cadle.
          In February 2003, Harkless, on Cadle’s behalf, filed an application with the
Texas State Bar Client Security Fund claiming that it had lost $70,038.41, the entire
amount of the default judgment, because of Lanier’s conduct. Harkless admitted that
the only way Cadle could have lost the entire value of the default judgment was if
Lanier had settled that claim.
          Morgan filed suit against Cadle seeking declaratory and injunctive relief, as
well as damages, contending that Cadle was bound by the settlement entered into by
Morgan and Lanier, Cadle’s outside counsel. After a bench trial, the trial court found
in favor of Morgan and entered a judgment that (1) declared that Cadle’s judgment
against Morgan was “fully and finally released”; (2) permanently enjoined Cadle 
from making any efforts to collect on the judgment; (3) ordered Cadle to release any
and all liens attached to Morgan’s property; and (4) awarded damages to Morgan. 
                                                          AGENCY
          In its first issue, Cadle contends that “Lanier lacked actual authority to bind the
Cadle Company to a settlement.” In its second issue, Cadle contends that Lanier did
not have the apparent authority to bind Cadle to a settlement. Although Cadle does
not specify a standard of review in either of these issues, we will construe its first two
issue as challenges to the legal and factual sufficiency of the evidence to support the
trial court’s finding that “Lanier had authority (actual and apparent) to bind Cadle to
the Settlement Agreement.”


 More specifically, the question is this, “Was Lanier
acting as Cadle’s agent when he negotiated the settlement agreement with Morgan?”
          A principal is liable for the acts of its agent when the agent has actual or
apparent authority to do those acts or when the principal ratifies those acts. Spring
Garden 76U, Inc. v. Stewert Title Co., 874 S.W.2d 945, 948 (Tex. App.—Houston
[1st Dist.] 1994, no writ); see Currey v. Lone Star Steel Co., 676 S.W.2d 205, 209
(Tex. App.—Fort Worth 1984, no writ) (actual and apparent authority); Little v.
Clark, 592 S.W.2d 61, 64 (Tex. Civ. App.—Fort Worth 1979, writ ref’d n.r.e.) 
(ratification). 
Actual Authority
          “Actual” authority, which includes both express and implied authority, usually
denotes authority that a principal (1) intentionally confers upon an agent, (2)
intentionally allows the agent to believe that he possesses, or (3) allows the agent to
believe that he possesses by want of due care. Spring Garden, 874 S.W.2d at 948;
Currey, 676 S.W.2d at 209-10; Behring Int’ Inc. v. Greater Houston Bank, 662
S.W.2d 642, 649 (Tex. App.—Houston [1st Dist.] 1983, writ dism’d). Express
authority exists when the principal has made it clear to the agent that he wants the act
under scrutiny to be done. City of San Antonio v. Aguilar, 670 S.W.2d 681, 684 
(Tex. App.—San Antonio 1984, writ dism’d). Implied authority exists when there is
no proof of express authority, but appearances justify a finding that, in some manner,
the agent was authorized to do what he did; in other words, there is circumstantial
proof of actual authority. Id. “Implied” actual authority exists only as an adjunct to
express actual authority, Behring, 662 S.W.2d at 649, because implied authority is
that which is proper, usual, and necessary to the exercise of the authority that the
principal expressly delegates. Employers Cas. Co. v. Winslow, 356 S.W.2d 160, 168
(Tex. Civ. App.—El Paso 1962, writ ref’d n.r.e.).
          Legal Sufficiency
          We begin by determining whether legally sufficient evidence supports the trial
court’s finding that Lanier had the actual authority—either express or implied—to
bind Cadle to the settlement agreement. As a general proposition, the law does not
presume agency. Buchoz v. Klein, 143 Tex. 284, 184 S.W.2d 271, 271 (1944). The
individual alleging agency has the burden to prove its existence. Id. Therefore, it
was Morgan’s burden to prove the existence of an agency relationship between Cadle
and Lanier. 
          When, as here, an appellant challenges the legal sufficiency of the evidence to
support a finding on which it did not have the burden of proof at trial, the appellant
must demonstrate on appeal that no evidence supports the adverse finding. Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In conducting a no-evidence review,
an appellate court must ‘view the evidence in a light that tends to support the finding
of the disputed fact and disregard all evidence and inferences to the contrary.” 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). A no-evidence point may be
sustained only when the record discloses one of the following: (1) there is a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence
from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence
conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998).
          If there is more than a scintilla of evidence to support the finding, the claim is
sufficient as a matter of law. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928
(Tex. 1993). But, if the evidence offered to prove a vital fact is so weak that it does
nothing more than create a mere surmise or suspicion of its existence, the evidence
is no more than a scintilla and, in legal effect, is no evidence. Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when
the evidence supporting the finding, as a whole, rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) (quoting Transp. Ins. Co.
v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). 
          Cadle, citing Southwestern Bell Tel. Co. v. Vidrine, argues that “the mere
employment of counsel does not clothe the counsel with authority to settle the case
without specific consent of the client.” 610 S.W.2d 803, 805 (Tex. App.—Houston
[1st Dist.] 1980, writ ref’d n.r.e.). We agree. However, in this case there is more than
the “mere employment” of Lanier as evidence of actual authority.
          First, there is the evidence that even before Lanier was hired, Cadle was willing
to settle the case with Morgan for less than the full value of the judgment. The trial
court could have reasonably concluded that Cadle hired Lanier for the purpose of
pursuing further attempts at settlement after its own initial attempts had proved
unsuccessful. 
          Second, the terms of representation between Cadle and Lanier do not place any
limits on Lanier’s authority to settle the judgment with Morgan.
          Third, Lanier made several representations that indicated his belief in his
authority to settle the claim. See Austin Area Teachers Fed. Credit Union v. First
City Bank-Northwest Hills, N.A., 825 S.W.2d 795, 799 (Tex. App.—Austin 1992, writ
denied) (considering agent’s belief that action was authorized in finding implied
authority).
          Finally, there was evidence that tended to show that Cadle’s actions after
discovering the settlement indicated Cadle, too, believed that Lanier possessed the
authority to settle the claim. For example, Cadle sent letters to Lanier demanding that
any money obtained from Morgan be sent to Cadle immediately. In a finding of fact
not challenged on appeal, the trial court found that “[i]f Lanier had not had authority
to bind Cadle to the Settlement Agreement, these letters should have demanded that
Lanier return the money to Morgan.” And, in another finding not challenged on
appeal, the trial court found that “Cadle, in effect, admitted that it had settled the
Default Judgment and released the claim,” by filing an application to the Texas State
Bar Client Security Fund claiming that Lanier’s acts had damaged it in the entire
amount that it claimed was owed under the default judgment, i.e., that Cadle no
longer possessed a claim against Morgan because it had been compromised and
settled.
          Under this record, the trial court could have reasonably concluded that there
was more than a scintilla of evidence to show that Lanier possessed the actual, albeit
implied, authority to settle the claim with Morgan on Cadle’s behalf.
 
          Factual Sufficiency
          When a party attacks the factual sufficiency of an adverse finding on an issue
on which he did not have the burden of proof at trial, he must show on appeal that
there is insufficient evidence to support the adverse finding. See Dyson v. Olin Corp.,
692 S.W.2d 456, 457 (Tex. 1985); Raw Hide Oil & Gas, Inc. v. Maxus Exploration
Co., 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo 1988, writ denied). To conduct
this review, we examine the entire record and consider and weigh all the evidence,
both in support of, and contrary to, the challenged finding. See Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445
(Tex. 1989). We must uphold the finding unless the evidence that supports it is so
weak as to be clearly wrong or manifestly unjust. See In re King’s Estate, 150 Tex.
662, 244 S.W.2d 660, 661 (1951); Raw Hide, 766 S.W.2d at 275-76; Otis Elevator
Co. v. Joseph, 749 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1988, no writ). 
          To counter the evidence detailed above, Cadle introduced the evidence of its
employee, Laura Harkless, who testified that she never authorized Lanier to bind
Cadle to the settlement agreement. Similarly, Morgan and his attorney, Michael
Landrum, could point to no evidence wherein Cadle specifically represented that
Lanier possessed the actual authority to settle the claim. While this evidence may
weigh in Cadle’s favor, it does not render the trial court’s finding that actual authority
existed against the great weight and preponderance of the evidence.
          Because we have found legally and factually sufficient evidence to support the
trial court’s finding that Lanier possessed actual authority to bind Cadle, we overrule
point of error one. Similarly, because we have found that there was legally and
factually sufficient evidence of Lanier’s actual authority to bind Cadle, we need not
address the issues of apparent authority, estoppel, or ratification, which are raised in
issues two through five, and decline to do so.
Damages
          In issue six, appellant contends (1) that the trial court erred by permitting
Morgan and his wife to offer expert opinion on the diminished value of their real
property, and (2) that there is factually insufficient evidence to support the damages
awarded.
          In its findings of fact, the trial court made the following findings pertaining to
Morgan’s damages.
19. Cadle’s Judgment Lien prevented Morgan from being able to sell
the following properties:
a) 1836 Country Creek Ct., Magnolia, Texas, 2706;
b) Lakeview Dr., Dallas Texas;
c) 16909 Butera Rd., Magnolia, Texas; and
d) Suncreek Lot (Lot 2, in Block 3, of Suncreek Ranch, Section
two, a subdivision in Brazoria County, Texas, according to the
map or plat therof, recorded in Volume 22, page 197 and
corrective plat of Suncreek Ranch, Section two, recorded in
Volume 22, page 383, both of the plat records of Brazoria
County, Texas).
 
20. Morgan paid carrying costs on the properties described in a)–d) in
paragraph 19, that he would not have paid but for his inability to sell the
properties because of the Judgment Lien.
 
21. The carrying costs of Morgan’s properties includes interest, taxes,
insurance, utility bill, and home owner’s association dues.
 
22. Morgan’s property located at 2706 Lakeview Dr., Dallas, Texas,
depreciated in value during the period of time that Morgan could not sell
it because of Cadle’s Judgment Lien.
 
23. Morgan incurred damages in the amount of $70,132 from the
carrying costs described in paragraph 20 and the depreciation in value
described in paragraph 22.

          Morgans’ Testimony as Experts

          Cadle contends the trial court erred by allowing the Morgans to testify about
the depreciated value of the Lakeview Property in Dallas, Texas. However, our
review of the record shows that the trial court actually sustained, in part, Cadle’s
objection to Mrs. Morgan’s testimony during the following exchange:
Q. Mrs. Morgan, did you—in addition to these carrying costs what
other damages is Mr. Morgan asking for related to the Lakeview
property?
 
A. He is asking for $50,000 for the devaluation since we do have a
tenant in there. When we had it as a model home we only walked —had
people walk through it; we’d go unlock it and actually had walk[ed]
people through it and then we had it as an office for probably three
months.
 
A. So would you—from your experience as a broker and as an owner
of this house, can you testify that this dollar amount is a reasonable
amount of the depreciation value?
 
[Cadle’s counsel]: Your Honor, the same objection I had before. The
testimony of the witness is based not simply on her status as an owner, which
at this point we didn’t even know she is an owner, but assuming she is is not
on her status as an owner but on her experience, training, education.

          [Trial court]: Let’s deal with this whole exposure [sic] issue.

          [Morgan’s counsel]: I’ll rephrase my question, Your Honor.
 
[Trial court]: Well, you’ll withdraw it and then ask a new question, is that
right?

          [Morgan’s counsel]: I’ll withdraw it.

          [Trial court]: Okay.
 
Q. As the owner of this house— 
 
A. Um-hum.
 
Q.—do you believe the value declined $50,000 because of the tenant?
 
A. Yes, I do.
 
A. Okay.
 
[The Court]: Well, the objection still holds, Counsel. She can give
testimony on the value of the house. At best we still have this issue
on—

          [Cadle’s counsel]: Absolutely, the causation.
 
[Trial court]: But you can now have her say what caused that as opposed to in
my opinion as an owner of day one it’s worth “X”; in my opinion as an owner
on day six it’s worth “Y.” I mean, you see?
 
          [Morgan’s counsel]: Okay.
 
          [Cadle’s counsel]: Your Honor— 

          [Trial court]: At best she can give testimony on fair market value. That’s it.

          [Cadle’s counsel]: At a particular point in time but not as to causation.

          [Trial court]: Exactly.

          [Morgan’s counsel]: May I withdraw my question and rephrase accordingly?

          [Trial court]: Yes. Yes, sir.

          * * * * 
 
Q. What do you believe the fair market value of the house is today?

          A. I would imagine we will be lucky if we can get $300,000.

          As is made clear from this passage, the trial court agreed that the Morgans
could testify, as owners, to the fair market value of their property on any given date,
but would not permit them, as experts, to testify about what caused any change in fair
market value. In sum, the trial court allowed the Morgans to testify that the fair
market value of the Lakeview property was at least $350,000 on the date that an
earnest money contract for that value fell through, and that, as of the date of trial, the
fair market value of the house was $300,000. However, the trial court would not
allow the Morgans to testify, as experts, that the decreased in value was caused by the
fact that the property was leased to a tenant.
          The trial court did not err by allowing the Morgans, as owners, to testify about
the fair market value of their property. See Redman Homes, Inc. v. Ivy, 920 S.W.2d
664, 669 (Tex. 1996).
          Factual Sufficiency of Damages Evidence
          The trial court awarded $70,132 in damages, which the trial court’s findings
of fact indicate were supported by (1) the Morgan’s carrying costs on the properties,
and (2) the depreciation of the Lakeview property.
          Cadle contends that the evidence is factually insufficient to support this amount
of damages. We again employ the usual standard of review for factual sufficiency. 
See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Specifically, Cadle contends
that (1) its judgment was never abstracted in Brazoria County, therefore Morgan
cannot recover damages for his inability to sell the Brazoria County property, and (2)
Morgan never received any offers on the County Creek or Butera Road properties.
          Even if we were to exclude the evidence of damages to the Brazoria County,
County Creek, and Butera Road properties, we nonetheless conclude that the
evidence of the damage to the Lakeview property alone would supports the judgment.
          The Morgans testified that they had an earnest money contract on the Lakeview
property in the amount of $350,000, which fell through because of Cadle’s lien. The
Morgans later testified that, as of the day of trial, the value of the Lakeview property
was $300,000. Therefore, the trial court could have reasonably concluded that the
Lakeview property had depreciated by $50,000.
          The Morgans also testified that they had incurred $20,132 in carrying costs
after the sale of the Lakeview property fell through. The carrying costs included
interest, taxes, insurance, utility bills, and home owner’s association dues.
          Thus, the total of damages to the Lakeview property alone is $70, 132—the
exact amount awarded in the judgment. As such, we conclude that the evidence
presented at trial was factually sufficient to support the damages awarded by the trial
court.
          We overrule point of error six.
CONCLUSION
          We affirm the judgment.
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.