**CAMERON COUNTY SAVINGS ASSOCIATION, Appellant,**

v.

**STEWART TITLE GUARANTY COMPANY, Appellee.**

No. 13–91–031–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 24, 1991.

Rehearing Overruled Dec. 5, 1991.

William L. Morrow, Law Offices of William L. Morrow, Harlingen, for appellant.

Paul J. McConnell, III, Ben A. Baring, Jr., Stephen C. Reid, III, De Lange, Hudspeth & Pitman, Houston, Rene O. Oliveira, Black, Hamilton, Roerig & Yanez, Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

The trial court granted summary judgment for Stewart Title Guaranty Company (Stewart Title), refusing to hold it liable to appellant Cameron County Savings Association (the lender), for damages from a buyer's default on a real estate loan. After reviewing the summary judgment evidence and the lender's five points of error, we affirm the trial court's judgment.

Although the record contains a default judgment against Valley Abstract & Title, the title company closing the transaction, this appeal concerns only the liability of the title insurer. The lender's theories of recovery against Stewart Title are all based on allegations that Valley Abstract was Stewart Title's agent for the closing of the real estate sale. Stewart Title moved for summary judgment asserting, among other things, that Valley Abstract was not its agent except to issue its title insurance policy, and thus, Stewart Title was not vicariously liable for any of Valley Abstract's alleged torts or breaches of duties or contracts.

According to the pleadings and evidence, the lender lent the buyer $943,200 to buy condominiums which cost $1,335,000. The closing documents showed that the buyer paid the balance, plus closing costs, for the real estate in cash, when in fact the buyer paid no cash, so that only the lender funded the sale. The lender avers that the transaction was a sham to defraud it, that Valley Abstract personnel manipulated the closing documents to conceal the buyer's lack of down payment, and that had it known of the lack of down payment, it would not have made the loan. The lender showed that when it foreclosed, the property's appraised value was $705,000, but it carried $1,025,778 in indebtedness. The lender also claims that federal regulators declared it insolvent because of this particular transaction. It now seeks consequential damages.

The lender alleged that Jane McInnis (McInnis), a Valley Abstract escrow officer, received the lender's closing instructions and its check for $943,200, prepared the closing documents or caused them to be prepared, and disbursed funds to various persons. Later, Valley Abstract issued the lender a Stewart Title title insurance policy. This suit does not involve any claims against that policy.

A summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988); *Flores v. H.E. Butt Stores, Inc.*, 791 S.W.2d 160, 162 (Tex.App.—Corpus Christi 1990, writ denied); Tex.R.Civ.P. 166a(c). The party seeking summary judgment has the burden of proof. Thus, we accept all evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Rath v. State*, 788 S.W.2d 48, 50 (Tex.App.—Corpus Christi 1990, writ denied).

However, when necessary to establish a fact issue, the nonmovant must expressly present its reasons to avoid summary judgment, with summary judgment proof, in a response. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex. 1982); *Mendez v. Internat'l Playtex, Inc.*, 776 S.W.2d 732, 733 (Tex.App.—Corpus Christi 1989, writ denied).

By point one, the lender asserts that whether Valley Abstract was Stewart Title's agent in closing the entire real estate transaction was a fact issue precluding summary judgment. The lender contends that a title insurance agent's role in receiving and disbursing escrow funds and in handling real estate closings is an integral part of the title insurance business, and that this role makes the title insurance agent the title insurer's implied agent to handle funds and to close the real estate transaction.

Usually,[1] the title insurance company, the title insurance agent, and the escrow agent oversee a real estate transaction. The title insurance **company** insures real property titles. The title insurance **agent** sells title insurance, collects the premiums, and issues or countersigns policies for the insurance company.[2] This agent is usually a title and abstract company which provides assorted services to its clients, such as selling title insurance, researching the title for that insurance, surveying the realty, and "closing" through **escrow agents.**[3]

The lender asserts that, by statutory definition, a title insurance company is not only the principal of the title insurance agent but also of the agent's escrow officers and, thus, the insurer is liable for the escrow officers' acts beyond issuing title insurance and collecting premiums. The lender relies on the wording of article 9.02(b) of the Texas Title Insurance Act (the Act) for its position that an escrow officer's responsibility to close the **entire** real estate transaction is part of its duties as an agent of the title insurance company.

■ In *Southwest Title Ins. Co. v. Northland Bldg. Co.*, 552 S.W.2d 425 (Tex. 1977), the Supreme Court reviewed a similar case in which a title company was sued over a closing of a real estate sale. The Supreme Court noted, "The arguments in the case confuse the closing of a title insurance contract and the closing of the entire transaction...." *Northland*, 552 S.W.2d at 428. The lender suffers the same confusion here. Article 9.02(n) defines "closing the transaction" as the title search and investigation relating to the title. Thus, contrary to the lender's argument, the statutory scheme does not require the title insurer to assume liability beyond the title insurance policy's coverage in the closing of the real estate transaction as a matter of law.

■ We next determine whether the facts shown on summary judgment in this case raise a fact question on whether the abstract company was the title insurer's agent for the closing of the entire real estate transaction, rather than just to close the assurance of title. A principal is liable for his agent's acts which the agent has actual or apparent authority from the principal to do, and for acts which the principal ratifies. *See Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 209 (Tex.Civ.App.— Fort Worth 1984, no writ) (actual and apparent authority); *Little v. Clark*, 592 S.W.2d 61, 64 (Tex.Civ.App.—Fort Worth

---

1. In a "direct operation," a title insurance company owns or leases and operates an abstract plant or participates in a joint abstract plant operation. Tex.Ins.Code Ann. art. 9.36A(A) (Vernon Supp.1991). This was not the case here.

2. Tex.Ins.Code Ann. art. 9.02(f) (Vernon 1981). A title insurance agent must be licensed and bonded in Texas. Tex.Ins.Code Ann. art. 9.35 (Vernon 1981); *see* Tex.Ins.Code Ann. arts. 9.36, 9.36A, 9.38 (Vernon Supp.1991).

3. An "escrow officer" is an attorney or **an employee of** an attorney licensed as an escrow officer, of a direct operation, or of a **title insurance agent,** whose duties include countersigning title insurance forms, supervising the preparation and delivery of title insurance forms, signing escrow checks, or closing the transaction. Tex.Ins.Code Ann. art. 9.02(g) (Vernon Supp.1991) [emphasis added]. An escrow officer must also be licensed and bonded with the State. Tex.Ins.Code Ann. art. 9.41 (Vernon Supp.1991); *see* Tex.Ins.Code Ann. arts. 9.42– 9.45 (Vernon Supp.1991).

1979, writ ref'd n.r.e.) (ratification). "Actual" authority includes both **express** and **implied** authority and usually denotes that authority which a principal a) intentionally confers upon an agent, b) intentionally allows the agent to believe that he possesses, or c) by want of due care allows the agent to believe that he possesses. *Currey*, 676 S.W.2d at 209–10; *Behring Int'l Inc. v. Greater Houston Bank*, 662 S.W.2d 642, 649 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Implied actual authority can exist only with express actual authority. *Behring*, 662 S.W.2d at 649. This is so because implied authority is that which is proper, usual and necessary to the exercise of the authority that the principal expressly delegates. *Employers Casualty Co. v. Winslow*, 356 S.W.2d 160, 168 (Tex.Civ. App.—El Paso 1962, writ ref'd n.r.e.); *see Behring*, 662 S.W.2d at 649.

■ While actual authority is created by written or spoken words or conduct by the principal to the agent, apparent authority is created by written or spoken words or conduct by the principal to a third party. *See Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir.1989); *Currey*, 676 S.W.2d at 210. Because apparent authority is based on the doctrine of estoppel, one seeking to charge the principal through apparent authority of his agent must show that the principal acted so that a reasonably prudent person would believe that the agent had the authority he purported to exercise. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981); *Hall v. F.A. Halamicek Enter. Inc.*, 669 S.W.2d 368, 375 (Tex.App.—Corpus Christi 1984, no writ); *see Underwriter's Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 819–20 (Tex.App.—Corpus Christi 1988, no writ). Apparent authority functions when the agent lacks actual authority; thus, when an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent actually has that authority. *Biggs*, 611 S.W.2d at 629.

■ James Kletke, Senior Vice President of Stewart Title, states by affidavit that Valley Abstract is not, and has never been, Stewart Title's agent for any purpose other than executing its title policies. Additionally, Stewart Title never held Valley Abstract out to the public as reliable or trustworthy in the closing of real estate transactions. Kletke states that Stewart Title conducts no business except title insurance. He also states that a) the lender and Stewart Title had no contract concerning this loan or concerning the reliability or trustworthiness of Valley Abstract or the relationship between Valley Abstract and Stewart Title before the transaction in this suit closed, b) Valley Abstract was not authorized to act on Stewart Title's behalf in conducting or accepting responsibility for the details and conditions of loan transactions or in collecting monies from any parties, other than the premiums for policies actually issued, nor was it authorized to act on Stewart Title's behalf in disbursing any funds to any parties other than to Stewart Title under the terms of the agency agreement, nor was it authorized to supply information for or execute any documents relating to the transaction, other than issuing the Stewart Title policy, c) that any such actions taken by Valley Abstract were taken on its own behalf, and d) no party to the transaction requested or received an insured closing letter from Stewart Title pursuant to Tex. Ins.Code Ann. art. 9.49 (Vernon 1981).

Attached to Kletke's affidavit is the contract by which Valley Abstract contracted with Stewart Title, a title insurer or underwriter, to act as Stewart Title's agent for executing land title insurance policies. That contract only gave Valley Abstract authority to execute title policies. By the contract, Valley Abstract specifically agrees not to receive nor receipt for any funds, including escrow funds, in Stewart Title's name. The contract provides that Valley Abstract's escrow account cannot create liability by Stewart Title to any party for funds deposited with Valley Abstract. Thus, the summary judgment evidence shows that Valley Abstract had no express authority to receive and disburse escrow funds or to close real estate sales on Stewart Title's behalf. Since it had no express actual authority, it could have no implied actual authority.

By deposition, Foger, a loan officer for the lender during the transaction, identified the closing instructions for the purchase which the lender sent to Valley Abstract. He also identified a Valley Abstract letter from McInnis to Gilda Hernandez, the lender's Loan Processor who closed the loan for it, conveying certain documents relating to the transaction. He indicated that the lender would not have known which company would issue title insurance until it reviewed the commitment for title insurance Valley Abstract issued on Stewart Title's behalf. He did not rely on anything Stewart Title said or did in deciding whether to present the loan application to the loan committee; he never spoke to anyone at Stewart Title about the loan. Further, before he got the lender's closing instructions and Stewart Title's letter from McInnis to Hernandez with the executed closing documents, Foger did not know what title insurance company would underwrite the title.

McInnis testified that Randel Hale, Valley Abstract's president, taught her to be a closer and that Hale gave her both approval and instructions for the transaction in question. Thus, Valley Abstract exercised no apparent authority to act on Stewart Title's behalf.

In opposition to the motion for summary judgment, the lender filed depositions and other documents regarding the closing of the escrow account. The evidence of education, warnings, practical advice, and general information passing between real estate related businesses and their employees does not show agency. Generally, all shared an interest in cooperating and in closing real estate deals. The summary judgment evidence shows that Stewart Title was not the principal in closing the real estate transaction.

We find additional support in *Northland*, which also raised the issue of title insurance company liability for acts of a title insurance agent who closed the entire transaction. In *Northland*, the title insurance company's attorney, who rendered legal opinions on land titles, also conducted the closing. The lender's closing instructions required him to obtain "estoppel letters" from the buyer to limit the priority of previous loans against the property on which the lender (Northland) was advancing funds. After finding that the estoppel letters were forged and misrepresented the property's indebtedness, the lender sued the title insurer, the attorney, and others. A jury found that the attorney was the title insurer's agent and apparent agent in the real estate closing and that the title insurer's accepting the benefits [the premiums] from the transaction ratified the closing. The trial court rendered judgment for Northland, and the court of appeals affirmed.

The Supreme Court of Texas, reversing both lower courts, held in part that no evidence showed that the title insurer conducted any business other than issuing title insurance policies or that it gave anyone actual authority over the details of loan transactions, and no evidence showed that the attorney did more for the title insurer at the real estate closing than issue its title policy. It concluded that the attorney was not the insurer's agent for the closing of the real estate transaction, and that the title insurance company was not liable.

This case is like *Northland*. Although the attorney "wore two hats" in selling the insurance and in closing the real estate sale, the Court ruled that the functions did not overlap to create liability beyond the insurance policy for the insurer. Similarly, while Valley Abstract was the title insurance agent and provided its escrow officer, McInnis, to close the sale, the title insurer was not liable for mishandling the closing of the real estate transaction. As in *Northland*, the title insurer merely received a title insurance premium, which did not create agency or liability.

The parties dispute whether Tex.Ins. Code Ann. art. 9.49 (Vernon 1981) is relevant. Article 9.49 permits title insurance companies to issue insured closing and settlement letters on request in certain situations. The summary judgment evidence shows that no closing and settlement letter was requested. Thus the section is not relevant. We overrule point one.

The lender's claim against Stewart Title depends on Valley Abstract's being its agent for the closing of the real estate sale. The summary judgment evidence shows conclusively that it was not. Points two through five are not dispositive. We need not address them. Tex.R.App.P. 90(a). Points two through five are overruled.

The judgment of the trial court is affirmed.