**SOCIEDAD DE SOLARIDAD SOCIAL "EL ESTILLERO", et al., Appellants,**

**v.**

**J.S. McMANUS PRODUCE CO., Appellee.**

**No. 13–96–397–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 19, 1998.

Dalinda G. Quintana, Law Offices of Ramon Garcia, Edinburg, Ramon Garcia, Edinburg, for Appellant.

O.C. Hamilton, Jr., William M. Mills, Atlas & Hall, McAllen, Patrick Francis Madden, McAllen, Lisa D. Powell, Atlas & Hall, McAllen, for Appellee.

Before DORSEY, YANEZ and
RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

This is a suit filed by Sociedad De Solaridad Social, "El Estillero" against J.S. McManus Produce Company to recover damages for breach of contract. Trial was to a jury, and after Sociedad presented its evidence, the trial court granted McManus's motion for a directed verdict. Sociedad appeals by five points of error. We affirm.

Moises Munoz Ortega formed an association in the State of Morelos, Mexico called Sociedad De Solaridad Social "El Estillero." [1] It was comprised of fifteen individuals and five families. He formed it as a vehicle to pool resources and export agricultural produce abroad. At issue in this appeal is an alleged contract between Sociedad and J.S. McManus Produce Company in which McManus agreed to sell Sociedad's onion production on a consignment basis. Sociedad began planting the onions in July or August 1990. While Sociedad grew and produced the onions, it dealt with two purported agents of McManus, Gilberto Santos and Amadeo Zarate. The evidence also showed in December 1990, Moises allegedly received a telephone call from a "Roberto" from McManus. During this conversation, the alleged contract was confirmed. On January 11, 1991, Sociedad turned over its onions to Santos and began shipping thirty-three truckloads of sacked onions to the United States. The onions were shipped in sacks marked "S & S." The initials stood for Santos and Santos. The onions were *not* shipped in sacks bearing McManus's logo. Sociedad received about $120,000 or $124,000 for the onions. Sociedad maintains McManus still owes it money for the onions. At the close of Sociedad's evidence, the trial court granted a directed verdict for McManus.

The chief issue in this case, as expressed in Sociedad's second point of error, is whether an agency relationship existed between McManus and either Zarate, Santos, or "Roberto."

■ A principal is liable for his agent's acts which the agent has actual or apparent authority from the principal to do, and for acts which the principal ratifies. *Cameron County Sav. Ass'n v. Stewart Title Guar. Co.*, 819 S.W.2d 600, 602 (Tex.App.—Corpus Christi 1991, writ denied). *See Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 209 (Tex.App.—Fort Worth 1984, no writ) (actual and apparent authority); *Little v. Clark*, 592 S.W.2d 61, 64 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.) (ratification). "Actual" authority includes both express and implied authority and usually denotes the authority which a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *Cameron County Sav. Ass'n*, 819 S.W.2d at 603; *Currey*, 676 S.W.2d at 209–10; *Behring Int'l, Inc. v. Greater Houston Bank*, 662 S.W.2d 642, 649 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Implied actual authority can exist only with express actual authority. *Behring*, 662 S.W.2d at 649. This is so because implied authority is authority which is proper, usual, and necessary to the exercise of the authority the principal expressly delegates. *Employers Casualty Co. v. Winslow*, 356 S.W.2d 160, 168 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.). *See Behring*, 662 S.W.2d at 649.

■ While actual authority is created by written or spoken words or conduct by the principal to the agent, apparent authority is created by written or spoken words or conduct by the principal to a third party. *Cameron County Sav. Ass'n*, 819 S.W.2d at 603. To establish apparent authority, one must show a principal either knowingly permitted an agent to hold itself out as having authority or showed a lack of ordinary care in order to clothe the agent with indicia of authority. *NationsBank v. Dilling*, 922 S.W.2d 950, 952–53 (Tex.1996) (per curiam); *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984). A court may consider only the conduct of the principal leading a third party to believe the agent has authority in determining whether an agent has apparent authority. *NationsBank*, 922 S.W.2d at 953; *Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 428 (Tex.1977). A party seeking

1. Translated, this means Society of Social Solidarity, "El Estillero."

to charge a principal through the apparent authority of its agent must establish conduct by the principal which would lead a reasonably prudent person to believe the agent has the authority it purports to exercise. *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981). The principal must have affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *NationsBank,* 922 S.W.2d at 953. See *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778–79 (Tex.1974).

 In reviewing the granting of an instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994) (per curiam); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex. 1978). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper, and an appellate court must reverse and remand the case for jury determination of the issue. *White,* 651 S.W.2d at 262.

*Evidence of Agency*

Due to Moises's death in May 1991, his son, Conrado, became Sociedad's leader and testified extensively about the growth and shipment of the onions. Santos and Zarate represented to Conrado they worked for McManus. He said Sociedad received some advances from McManus to help grow and produce the onions. However, he could produce no evidence to support this contention. He further testified Sociedad received all of its money by check. But, in 1990, Sociedad never received a check drawn on McManus's bank account. In 1991, when Sociedad began shipping the onions, the only payments it received came from Zarate.

Concerning actual authority, there is no evidence that McManus intentionally conferred authority on any agent, intentionally allowed any agent to believe he possessed authority, or by want of due care allowed the agent to believe he possessed authority. Similarly as to apparent authority, there is no evidence that McManus either knowingly permitted an agent to hold itself out as having authority or showed a lack of ordinary care in order to clothe the agent with indicia of authority. There is nothing in the record showing any knowledge by McManus of the representation of Santos and Zarate.

Accordingly, Sociedad did not meet its burden to propound some evidence showing Zarate, "Roberto," or Santos had authority, actual or apparent, to act as McManus's agents. We hold the trial court did not err by granting an instructed verdict on the ground of no agency relationship. We overrule point two.

By point one, Sociedad asserts the trial court erred in granting the directed verdict because the evidence showed there was an agreement between itself and McManus. Even assuming a contract existed between Sociedad and McManus, Sociedad turned over the onions to Santos, who was not McManus's agent. There is no evidence that Sociedad delivered onions to McManus. We overrule point one.

Due to our disposition of the above points of error, we need not address the remaining points of error. TEX.R.APP. P. 47.1.

We AFFIRM the trial court's judgment.