# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00213-CV

**Eastern Livestock Co., Appellant**

v.

**Bode Livestock d/b/a Richard Bode, Appellee**

### FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT
### NO. 7646, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

Following a jury trial, the district court rendered judgment on the verdict against Eastern Livestock Co. ("Eastern"). The jury determined that Shane Hasha was acting as an agent for Eastern when he purchased 140 heifers from Bode Livestock d/b/a Richard Bode ("Bode") and consequently, Eastern owed Bode for the cost of the cattle. Eastern appeals contending that the district court erred in rendering judgment because: (1) insufficient evidence supported the jury's finding that Hasha acted as Eastern's agent in the cattle purchase; (2) certain testimony and documents were improperly excluded at trial; and (3) the court should have submitted a different jury charge instruction about agency. We will affirm the judgment.

### Background

Bode, a rancher and independent cattle dealer in San Saba, testified that he locates cattle for sale, purchases the cattle, and then sells them again making a small profit on the resale. In December 1997, Bode learned that Robert Whitten, also a San Saba resident, had 140 heifers for sale.

After inspecting the cattle, Bode called Hasha, a cattle trader in Baird, because he thought Whitten's heifers matched a description of cattle Hasha was seeking. Bode had sold cattle to Hasha once before. Bode heard that Hasha was buying cattle for Eastern, one of the largest cattle buying companies in the country. When Bode first spoke with Hasha about the 140 heifers, Hasha told him that he was interested in the cattle, would make a phone call, and get back with Bode about the cattle. Hasha later called Bode and told him he would buy the cattle, they set the price, and set a delivery date of December 10, 1997. Apparently, they did not at that time discuss who would be taking delivery of the cattle.

Hasha called Bode on December 9, 1997, and told him that, although he was usually present at a cattle delivery, this time he would be unable to attend the delivery of the 140 heifers set for the next day. Hasha told Bode that Eastern trucks would be there to pick up the cattle, that Eastern was taking the cattle to Montfort of Yuma, Colorado, and that Eastern wanted the certificate of veterinary inspection sent to Montfort. Since Hasha was not going to be there for the delivery, Bode asked Hasha to wire him the money for the cattle; Hasha said that he would. On December 10, Bode paid Whitten for the 140 heifers with a Bode Livestock check and Eastern trucks picked up the cattle to take them to Colorado. Bode phoned Hasha with the final weight and price information regarding the cattle and again asked Hasha to wire him the money. In the same phone conversation, Hasha then told Bode that Eastern's policy was that it does not wire money, but, Hasha told Bode that he was carrying an Eastern checkbook. Bode told Hasha he would rather have the money wired but that a check by overnight mail would be acceptable. Bode assumed that since Hasha had an Eastern checkbook he must be working for Eastern as their representative. Bode explained that in

2

the cattle trading business, when a trader states he is carrying a checkbook for another entity or individual, implicit in such a statement is the representation that the trader is not working independently, but is working for the other entity or individual. Additionally, Bode regarded Eastern's involvement in the transaction, the fact that Eastern's trucks picked up the cattle and Hasha's representation that he had Eastern's checks, as indicators that in this transaction Hasha was acting as a cattle agent for Eastern.

When Bode did not receive an Eastern check overnight, he began making phone calls to Hasha inquiring about his check. He never received a check from Hasha. By December 26, Bode was very suspicious and tried to locate Hasha. As he was unsuccessful contacting Hasha, Bode called Eastern's home office in Kentucky, and they referred him to Jimmy Rhoderick, Eastern's representative in Amarillo. On December 27, Bode called Rhoderick who told Bode that he was aware of the purchase of the 140 heifers and that Eastern had already paid Hasha for the cattle. Rhoderick faxed Bode a copy of the Eastern check paid to the order of "Shane Hasha/Rafter H–Security State Bank of Abilene, TX."

At that point, Bode changed his mind about Hasha's status as an agent of Eastern; he thought instead that Hasha had lied to him about carrying an Eastern checkbook. Bode filed suit against Hasha and also Security State Bank because Bode did not believe that the bank was entitled to any of the money from the cattle purchase. Because he now believed this to be a theft case, Bode contacted a private investigative group that assists in the prosecution of cattle theft cases by finding evidence and presenting it to the district attorney. What in fact had occurred, was that Eastern had indeed given Hasha Eastern checks and Hasha, rather than paying Bode with an Eastern check as he

3

had represented to Bode that he would do, made the check out to himself and never paid Bode for the 140 heifers Eastern picked up on December 10.

Shortly after Bode filed his lawsuit, Hasha filed for bankruptcy protection. When Bode reviewed evidence in the bankruptcy file, he learned that Hasha indeed had Eastern checks as he initially represented to Bode. Bode realized that Hasha had not lied to him about having an Eastern checkbook. Bode then amended his petition and included Eastern as a defendant in the lawsuit. Bode agreed that Hasha never told him directly that he was an Eastern agent, but, the fact that Hasha represented to Bode that he carried an Eastern checkbook, that Bode had heard that Hasha had been involved in other cattle transactions for Eastern, that Hasha told Bode that Eastern did not wire money, and that Hasha told Bode that Eastern trucks would pick up the cattle, and that Hasha told Bode that Eastern wanted the veterinary certificate prepared and sent to Montfort, led Bode to believe that Hasha was acting as an agent for Eastern when he bought the 140 heifers.

Hasha pleaded guilty to the offense of cattle theft of the 140 heifers, received a probated sentence, and was ordered to pay Bode the money owed for the cattle over a period of ten years. Bode testified that by this lawsuit against Eastern he was not seeking a double recovery but that he believed Eastern could pay the full amount faster than Hasha and that Hasha could make his restitution payments to Eastern rather than to Bode.[1]

Eastern's position in the lawsuit was that Hasha was not its agent in this cattle transaction, that Hasha had never represented himself as such to Bode, and that Hasha was simply an independent cattle dealer. Additionally, Eastern argued that, based on Bode's invoice, Bode sold

---

[1] Indeed, the judgment provided Eastern a credit for any payments Hasha made to Bode.

4

the heifers to Hasha and not to Eastern, and there was no indication of any agency relationship between Hasha and Eastern on Bode's sale invoice for the 140 heifers.

The question presented to the jury was, "Do you find that Shane Hasha was an Agent for Eastern Livestock Co. in the purchase of the 140 heifers from Plaintiff Bode?" The charge included instructions regarding actual authority and apparent authority. The jury answered, "Yes" to the question presented, and the court rendered judgment against Eastern.

**Discussion**

On appeal Eastern contends that: (1) insufficient evidence supports the jury's finding that Hasha was an agent for Eastern; (2) the district court erred in excluding certain evidence; and (3) the charge did not contain a proper instruction regarding apparent authority.

*Sufficiency of the evidence*

In reviewing the evidence under a no-evidence point, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Co. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *see also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex. 1994) ("The evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference [that the jury must reach]."). "In evaluating legal sufficiency, we are required to determine whether the proffered evidence as a whole rises to the level that would enable reasonable and fair-minded people to differ in their conclusions." *Moriel*, 879 S.W.2d at 25. In evaluating factual sufficiency, we review the entire record and set aside the finding only if it is so against the great

5

weight and preponderance of the evidence so as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will not substitute our judgment for that of the trier of fact merely because we might reach a different conclusion. *Westech Eng'g Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

A principal is liable for an agent's acts when the agent has actual or apparent authority from the principal to do the acts. *Sociedad de Solaridad Social "El Estillero" v. McManus Produce Co.*, 964 S.W.2d 332, 334 (Tex. App.—Corpus Christi 1998, no pet.) (citing *Cameron County Sav. Ass'n v. Steward Title Guar. Co.*, 819 S.W.2d 600, 602 (Tex. App.—Corpus Christi 1991, writ denied); *Curry v. Lone Star Steel Co.*, 676 S.W.2d 205, 209 (Tex. Civ. App.—Fort Worth 1984, no writ)). "Actual" authority includes both express and implied authority and usually denotes the authority that a principal (1) intentionally confers upon an agent; (2) intentionally allows the agent to believe he possesses; or (3) by want of due care allows the agent to believe he possesses. *Cameron County Sav. Ass'n*, 819 S.W.2d at 603. Implied actual authority can exist only if there has been express actual authority. *Behring Int'l, Inc. v. Greater Houston Bank*, 662 S.W.2d 642, 649 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). Implied authority is that authority which is proper, usual, and necessary to the exercise of the authority the principal expressly delegated. *Id.*

While actual authority is created by written or spoken words or conduct by the principal to the agent, apparent authority is created by written or spoken words or conduct by the principal to a third party. *Cameron County Sav. Ass'n*, 819 S.W.2d at 603. "To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such a lack of ordinary care as to clothe the agent with the indicia of

6

authority." *NationsBank v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996) (citing *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984)). A party seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe the agent had the authority it purported to exercise. *Id.* (citing *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981)). In determining whether an agent had apparent authority, a court considers only the conduct of the principal that would lead a third party to believe the agent had apparent authority. *Dilling*, 922 S.W.2d at 953. It is the principal's conduct, attitude and knowledge that determines whether an agent has apparent authority. *Id.*

There were several indications in the record that Hasha had actual authority to act as an agent for Eastern. Eastern, through its Texas representative Rhoderick, gave Hasha signed, blank, Eastern checks to carry so that Hasha could help Rhoderick buy cattle for Eastern. By giving Hasha signed, blank, Eastern checks, Rhoderick expressly delegated authority to Hasha to negotiate the signed, blank, checks and buy cattle for Eastern. Although there is no evidence of a formal, written contract expressly designating Hasha as Eastern's agent, Eastern intentionally conferred upon Hasha the authority to purchase cattle for Eastern. According to Rhoderick, of the 500-600 people that purchased cattle for Eastern through him, Eastern gave only four or five people signed, blank, Eastern checks, one of whom was Hasha. Finally, authority as an agent can be implied based on the facts and circumstances surrounding the transaction. While Hasha did not state that he was an Eastern agent, the evidence presented supported the proposition that he acted with authority from Eastern in purchasing cattle for them. Hasha told Bode that he carried an Eastern checkbook. Hasha knew that

Eastern did not wire money and informed Bode about the policy. Hasha also told Bode that Eastern trucks would be taking delivery of the cattle.

Regarding evidence of Hasha's apparent authority, Bode testified that in the cattle trading business, when a person is carrying a company's checkbook, the implication is that the person is an agent for the company. Thus, in giving Hasha signed checks, Eastern knowingly conveyed to others the impression that Hasha carried the checks with the authority of the company. Eastern's involvement in the purchase, i.e., taking possession of the cattle and issuing instructions regarding veterinarian certificates for the cattle, were indicators that Hasha had apparent authority to act as an agent for Eastern when purchasing the cattle from Bode. Finally, to prove apparent authority, Bode must show that he relied upon the representation of authority. Bode testified that based upon Eastern's stature in the cattle trading business, anyone who states they are carrying an Eastern checkbook is given a great deal of credibility. Instead of following his regular practice of requiring payment before releasing cattle, Bode indicated that he was willing to release these cattle to Eastern trucks without payment because at the time he believed the cattle were actually being sold to Eastern. Specifically, Bode was willing to release the cattle because Eastern gave Hasha an Eastern checkbook. The sentiment among cattle dealers was that it was unlikely Eastern would write a bad check or fail to pay for delivered cattle. Eastern's actions placed Bode in a position where it was reasonable for him as a person familiar with the cattle trading business to believe that Hasha had authority to act for Eastern.

We hold that the evidence is legally and factually sufficient to support the jury's finding that Hasha acted with actual and apparent authority for Eastern either of which would support the verdict. Eastern's first issue is overruled.

### *Exclusion of testimony and evidence*

In its second issue, Eastern contends that the district court erred by excluding testimony from Trey Aiken, who was a vice-president of Security State Bank where Hasha maintained his bank accounts. Eastern argues that Aiken's testimony was critical in determining whether Hasha acted as Eastern's agent. Eastern preserved its complaint and developed Aiken's testimony in a bill of exception. According to the bill of exception, Aiken would have testified that Hasha was an independent cattle dealer in this transaction, that Hasha never told Aiken that he was an agent for Eastern, that Hasha always acted independently, and that Hasha had requested that the Bank pay Bode but by that time his account had been frozen.

The admission and exclusion of evidence is a decision within the trial court's discretion. *Best Indus. Uniform Supply Co. v. Gulf Coast Alloy Welding, Inc.*, 41 S.W.3d 145, 147 (Tex. App.—Amarillo 2000, pet. denied). In challenging the trial court's decision to exclude evidence, the complaining party must show that the court's decision was arbitrary and unreasonable. *Id.* at 147-48. To challenge the exclusion of Aiken's testimony, Eastern must show that (1) it was preserved by an offer of proof; (2) the testimony was controlling on a material issue in the case; and (3) the testimony was not cumulative. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994).

The issue of whether Hasha was an agent for Eastern is determined by examining the conduct of Eastern, Hasha and Bode. *See Curry*, 679 S.W.2d at 210; *Disney*, 981 S.W.2d at 30.

9

Aiken's excluded testimony would relate to representations made by Hasha to a third party, Aiken, who was not involved in the cattle transaction. Additionally, Aiken's testimony would be cumulative of other testimony from individuals with first-hand knowledge of the transaction. Both Hasha and Rhoderick testified that Hasha was not an agent and acted independently in the transaction. We hold that Eastern has not shown that the trial court erred in excluding Aiken's testimony. Even if it was error to exclude Aiken's testimony, the decision was not harmful and did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). Eastern's second issue is overruled.

In its third issue, Eastern contends that the trial court erred by excluding invoices offered by Eastern and excluding testimony from Hasha regarding his guilty plea to the offense of cattle theft.

Regarding Eastern's contention that the trial court improperly excluded Eastern invoices, Bode notes that two of the documents about which Eastern complains were admitted at trial as Bode's exhibits one and four. Eastern's complaint regarding these two documents is overruled.

The trial court has discretion to admit or exclude evidence. *National Liab. & Fire Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). To obtain reversal based upon the erroneous exclusion of evidence, an appellant must show that the excluded evidence was controlling on a material issue, was not cumulative of other evidence, and the error in excluding the evidence probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex. 1995).

The other two invoices Eastern contends were improperly excluded are Eastern shipping invoices that relate to the same cattle transaction and show essentially the same information

as other invoices admitted at trial. Because these invoices are cumulative of information admitted during trial, we hold that the trial court did not err in excluding them from evidence. Additionally, even if it was error to exclude them, such error did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1).

Eastern also contends that the trial court erred in disallowing testimony from Hasha that he would not have pleaded guilty to cattle theft if he had in fact been acting as an agent for Eastern. Admitted into evidence as Eastern's exhibits were documents relating to Hasha's guilty plea, the judgment on his guilty plea, and the terms and conditions of his probation. The jury heard testimony that Hasha pleaded guilty to cattle theft and that Bode was receiving restitution payments from Hasha as a result of a plea bargain. The jury also heard testimony from Hasha that he did not act as Eastern's agent. Consequently, the jury was informed that Hasha was personally convicted of the theft and the jury had the ability to infer that Hasha would not have entered the guilty plea if instead he had been acting as Eastern's agent. Again, such testimony from Hasha would have been cumulative and would not have provided any new evidence. We hold that the trial court did not abuse its discretion in refusing to allow Hasha to testify that he would not have entered the guilty plea if he had been acting as Eastern's agent. Eastern's third issue is overruled.

### *Jury charge instruction*

In its fourth issue Eastern contends that the trial court erred in submitting a charge to the jury that contained an improper instruction regarding agency. Eastern contends that the trial court should have submitted an instruction to the jury stating that "the principal in that case must have affirmatively held out an agent as possessing the authority or must have knowingly and voluntarily

11

permitted the agent to act in an authorized manner." Bode responds that although phrased slightly differently, the jury instruction submitted addressing apparent authority was substantially similar to the language requested by Eastern.

One of the instructions given stated, "To establish apparent authority, Bode must show that Eastern either knowingly permitted Hasha to hold himself out as having authority or showed lack of ordinary care in order to clothe Hasha with indicators of authority." We hold that the instruction submitted adequately addressed the issue about which Eastern complains. The jury was instructed that in order to find apparent authority, the principal, Eastern, must have either knowingly permitted Hasha to hold himself out as having authority, or, through its lack of due care, gave Hasha the indicators of authority. Eastern's fourth issue is overruled.

The judgment of the trial court is affirmed.

_____

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   February 14, 2002

Do Not Publish