TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00213-CV






Eastern Livestock Co., Appellant



v.



Bode Livestock d/b/a Richard Bode, Appellee






FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT


NO. 7646, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING 






 Following a jury trial, the district court rendered judgment on the verdict against
Eastern Livestock Co. ("Eastern"). The jury determined that Shane Hasha was acting as an agent
for Eastern when he purchased 140 heifers from Bode Livestock d/b/a Richard Bode ("Bode") and
consequently, Eastern owed Bode for the cost of the cattle. Eastern appeals contending that the
district court erred in rendering judgment because: (1) insufficient evidence supported the jury's
finding that Hasha acted as Eastern's agent in the cattle purchase; (2) certain testimony and
documents were improperly excluded at trial; and (3) the court should have submitted a different jury
charge instruction about agency. We will affirm the judgment. 


Background


 Bode, a rancher and independent cattle dealer in San Saba, testified that he locates
cattle for sale, purchases the cattle, and then sells them again making a small profit on the resale. 
In December 1997, Bode learned that Robert Whitten, also a San Saba resident, had 140 heifers for
sale. After inspecting the cattle, Bode called Hasha, a cattle trader in Baird, because he thought
Whitten's heifers matched a description of cattle Hasha was seeking. Bode had sold cattle to Hasha
once before. Bode heard that Hasha was buying cattle for Eastern, one of the largest cattle buying
companies in the country. When Bode first spoke with Hasha about the 140 heifers, Hasha told him
that he was interested in the cattle, would make a phone call, and get back with Bode about the cattle.
Hasha later called Bode and told him he would buy the cattle, they set the price, and set a delivery
date of December 10, 1997. Apparently, they did not at that time discuss who would be taking
delivery of the cattle.

 Hasha called Bode on December 9, 1997, and told him that, although he was usually
present at a cattle delivery, this time he would be unable to attend the delivery of the 140 heifers set
for the next day. Hasha told Bode that Eastern trucks would be there to pick up the cattle, that
Eastern was taking the cattle to Montfort of Yuma, Colorado, and that Eastern wanted the certificate
of veterinary inspection sent to Montfort. Since Hasha was not going to be there for the delivery,
Bode asked Hasha to wire him the money for the cattle; Hasha said that he would. On December
10, Bode paid Whitten for the 140 heifers with a Bode Livestock check and Eastern trucks picked
up the cattle to take them to Colorado. Bode phoned Hasha with the final weight and price
information regarding the cattle and again asked Hasha to wire him the money. In the same phone
conversation, Hasha then told Bode that Eastern's policy was that it does not wire money, but, Hasha
told Bode that he was carrying an Eastern checkbook. Bode told Hasha he would rather have the
money wired but that a check by overnight mail would be acceptable. Bode assumed that since
Hasha had an Eastern checkbook he must be working for Eastern as their representative. Bode
explained that in the cattle trading business, when a trader states he is carrying a checkbook for
another entity or individual, implicit in such a statement is the representation that the trader is not
working independently, but is working for the other entity or individual. Additionally, Bode
regarded Eastern's involvement in the transaction, the fact that Eastern's trucks picked up the cattle
and Hasha's representation that he had Eastern's checks, as indicators that in this transaction Hasha
was acting as a cattle agent for Eastern. 

 When Bode did not receive an Eastern check overnight, he began making phone calls
to Hasha inquiring about his check. He never received a check from Hasha. By December 26, Bode
was very suspicious and tried to locate Hasha. As he was unsuccessful contacting Hasha, Bode
called Eastern's home office in Kentucky, and they referred him to Jimmy Rhoderick, Eastern's
representative in Amarillo. On December 27, Bode called Rhoderick who told Bode that he was
aware of the purchase of the 140 heifers and that Eastern had already paid Hasha for the cattle. 
Rhoderick faxed Bode a copy of the Eastern check paid to the order of "Shane Hasha/Rafter
H-Security State Bank of Abilene, TX." 

 At that point, Bode changed his mind about Hasha's status as an agent of Eastern; he
thought instead that Hasha had lied to him about carrying an Eastern checkbook. Bode filed suit
against Hasha and also Security State Bank because Bode did not believe that the bank was entitled
to any of the money from the cattle purchase. Because he now believed this to be a theft case, Bode
contacted a private investigative group that assists in the prosecution of cattle theft cases by finding
evidence and presenting it to the district attorney. What in fact had occurred, was that Eastern had
indeed given Hasha Eastern checks and Hasha, rather than paying Bode with an Eastern check as he
had represented to Bode that he would do, made the check out to himself and never paid Bode for
the 140 heifers Eastern picked up on December 10.

 Shortly after Bode filed his lawsuit, Hasha filed for bankruptcy protection. When
Bode reviewed evidence in the bankruptcy file, he learned that Hasha indeed had Eastern checks as
he initially represented to Bode. Bode realized that Hasha had not lied to him about having an
Eastern checkbook. Bode then amended his petition and included Eastern as a defendant in the
lawsuit. Bode agreed that Hasha never told him directly that he was an Eastern agent, but, the fact
that Hasha represented to Bode that he carried an Eastern checkbook, that Bode had heard that Hasha
had been involved in other cattle transactions for Eastern, that Hasha told Bode that Eastern did not
wire money, and that Hasha told Bode that Eastern trucks would pick up the cattle, and that Hasha
told Bode that Eastern wanted the veterinary certificate prepared and sent to Montfort, led Bode to
believe that Hasha was acting as an agent for Eastern when he bought the 140 heifers. 

 Hasha pleaded guilty to the offense of cattle theft of the 140 heifers, received a
probated sentence, and was ordered to pay Bode the money owed for the cattle over a period of ten
years. Bode testified that by this lawsuit against Eastern he was not seeking a double recovery but
that he believed Eastern could pay the full amount faster than Hasha and that Hasha could make his
restitution payments to Eastern rather than to Bode. (1) 

 Eastern's position in the lawsuit was that Hasha was not its agent in this cattle
transaction, that Hasha had never represented himself as such to Bode, and that Hasha was simply
an independent cattle dealer. Additionally, Eastern argued that, based on Bode's invoice, Bode sold
the heifers to Hasha and not to Eastern, and there was no indication of any agency relationship
between Hasha and Eastern on Bode's sale invoice for the 140 heifers.

 The question presented to the jury was, "Do you find that Shane Hasha was an Agent
for Eastern Livestock Co. in the purchase of the 140 heifers from Plaintiff Bode?" The charge
included instructions regarding actual authority and apparent authority. The jury answered, "Yes"
to the question presented, and the court rendered judgment against Eastern. 


Discussion


 On appeal Eastern contends that: (1) insufficient evidence supports the jury's finding
that Hasha was an agent for Eastern; (2) the district court erred in excluding certain evidence; and
(3) the charge did not contain a proper instruction regarding apparent authority. 


Sufficiency of the evidence

 In reviewing the evidence under a no-evidence point, we consider all the evidence in
the light most favorable to the prevailing party, indulging every reasonable inference in that party's
favor. Associated Indem. Co. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998); see
also Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 24 (Tex. 1994) ("The evidence presented,
viewed in the light most favorable to the prevailing party, must be such as to permit the logical
inference [that the jury must reach]."). "In evaluating legal sufficiency, we are required to determine
whether the proffered evidence as a whole rises to the level that would enable reasonable and
fair-minded people to differ in their conclusions." Moriel, 879 S.W.2d at 25. In evaluating factual
sufficiency, we review the entire record and set aside the finding only if it is so against the great
weight and preponderance of the evidence so as to be manifestly unjust. Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986). We will not substitute our judgment for that of the trier of fact merely because
we might reach a different conclusion. Westech Eng'g Inc. v. Clearwater Constructors, Inc., 835
S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). 

 A principal is liable for an agent's acts when the agent has actual or apparent authority
from the principal to do the acts. Sociedad de Solaridad Social "El Estillero" v. McManus Produce
Co., 964 S.W.2d 332, 334 (Tex. App.--Corpus Christi 1998, no pet.) (citing Cameron County Sav.
Ass'n v. Steward Title Guar. Co., 819 S.W.2d 600, 602 (Tex. App.--Corpus Christi 1991, writ
denied); Curry v. Lone Star Steel Co., 676 S.W.2d 205, 209 (Tex. Civ. App.--Fort Worth 1984, no
writ)). "Actual" authority includes both express and implied authority and usually denotes the
authority that a principal (1) intentionally confers upon an agent; (2) intentionally allows the agent
to believe he possesses; or (3) by want of due care allows the agent to believe he possesses. 
Cameron County Sav. Ass'n, 819 S.W.2d at 603. Implied actual authority can exist only if there has
been express actual authority. Behring Int'l, Inc. v. Greater Houston Bank, 662 S.W.2d 642, 649
(Tex. App.--Houston [1st Dist.] 1983, writ dism'd). Implied authority is that authority which is
proper, usual, and necessary to the exercise of the authority the principal expressly delegated. Id. 

 While actual authority is created by written or spoken words or conduct by the
principal to the agent, apparent authority is created by written or spoken words or conduct by the
principal to a third party. Cameron County Sav. Ass'n, 819 S.W.2d at 603. "To establish apparent
authority, one must show that a principal either knowingly permitted an agent to hold itself out as
having authority or showed such a lack of ordinary care as to clothe the agent with the indicia of
authority." NationsBank v. Dilling, 922 S.W.2d 950, 952-53 (Tex. 1996) (citing Ames v. Great S.
Bank, 672 S.W.2d 447, 450 (Tex. 1984)). A party seeking to charge a principal through the apparent
authority of its agent must establish conduct by the principal that would lead a reasonably prudent
person to believe the agent had the authority it purported to exercise. Id. (citing Biggs v. United
States Fire Ins. Co., 611 S.W.2d 624, 629 (Tex. 1981)). In determining whether an agent had
apparent authority, a court considers only the conduct of the principal that would lead a third party
to believe the agent had apparent authority. Dilling, 922 S.W.2d at 953. It is the principal's conduct,
attitude and knowledge that determines whether an agent has apparent authority. Id. 

 There were several indications in the record that Hasha had actual authority to act as
an agent for Eastern. Eastern, through its Texas representative Rhoderick, gave Hasha signed, blank,
Eastern checks to carry so that Hasha could help Rhoderick buy cattle for Eastern. By giving Hasha
signed, blank, Eastern checks, Rhoderick expressly delegated authority to Hasha to negotiate the
signed, blank, checks and buy cattle for Eastern. Although there is no evidence of a formal, written
contract expressly designating Hasha as Eastern's agent, Eastern intentionally conferred upon Hasha
the authority to purchase cattle for Eastern. According to Rhoderick, of the 500-600 people that
purchased cattle for Eastern through him, Eastern gave only four or five people signed, blank,
Eastern checks, one of whom was Hasha. Finally, authority as an agent can be implied based on the
facts and circumstances surrounding the transaction. While Hasha did not state that he was an
Eastern agent, the evidence presented supported the proposition that he acted with authority from
Eastern in purchasing cattle for them. Hasha told Bode that he carried an Eastern checkbook. Hasha
knew that Eastern did not wire money and informed Bode about the policy. Hasha also told Bode
that Eastern trucks would be taking delivery of the cattle. 

 Regarding evidence of Hasha's apparent authority, Bode testified that in the cattle
trading business, when a person is carrying a company's checkbook, the implication is that the
person is an agent for the company. Thus, in giving Hasha signed checks, Eastern knowingly
conveyed to others the impression that Hasha carried the checks with the authority of the company.
Eastern's involvement in the purchase, i.e., taking possession of the cattle and issuing instructions
regarding veterinarian certificates for the cattle, were indicators that Hasha had apparent authority
to act as an agent for Eastern when purchasing the cattle from Bode. Finally, to prove apparent
authority, Bode must show that he relied upon the representation of authority. Bode testified that
based upon Eastern's stature in the cattle trading business, anyone who states they are carrying an
Eastern checkbook is given a great deal of credibility. Instead of following his regular practice of
requiring payment before releasing cattle, Bode indicated that he was willing to release these cattle
to Eastern trucks without payment because at the time he believed the cattle were actually being sold
to Eastern. Specifically, Bode was willing to release the cattle because Eastern gave Hasha an
Eastern checkbook. The sentiment among cattle dealers was that it was unlikely Eastern would write
a bad check or fail to pay for delivered cattle. Eastern's actions placed Bode in a position where it
was reasonable for him as a person familiar with the cattle trading business to believe that Hasha had
authority to act for Eastern. 

 We hold that the evidence is legally and factually sufficient to support the jury's
finding that Hasha acted with actual and apparent authority for Eastern either of which would support
the verdict. Eastern's first issue is overruled. 


Exclusion of testimony and evidence

 In its second issue, Eastern contends that the district court erred by excluding
testimony from Trey Aiken, who was a vice-president of Security State Bank where Hasha
maintained his bank accounts. Eastern argues that Aiken's testimony was critical in determining
whether Hasha acted as Eastern's agent. Eastern preserved its complaint and developed Aiken's
testimony in a bill of exception. According to the bill of exception, Aiken would have testified that
Hasha was an independent cattle dealer in this transaction, that Hasha never told Aiken that he was
an agent for Eastern, that Hasha always acted independently, and that Hasha had requested that the
Bank pay Bode but by that time his account had been frozen. 

 The admission and exclusion of evidence is a decision within the trial court's
discretion. Best Indus. Uniform Supply Co. v. Gulf Coast Alloy Welding, Inc., 41 S.W.3d 145, 147
(Tex. App.--Amarillo 2000, pet. denied). In challenging the trial court's decision to exclude
evidence, the complaining party must show that the court's decision was arbitrary and unreasonable. 
Id. at 147-48. To challenge the exclusion of Aiken's testimony, Eastern must show that (1) it was
preserved by an offer of proof; (2) the testimony was controlling on a material issue in the case; and
(3) the testimony was not cumulative. Mentis v. Barnard, 870 S.W.2d 14, 16 (Tex. 1994). 

 The issue of whether Hasha was an agent for Eastern is determined by examining the
conduct of Eastern, Hasha and Bode. See Curry, 679 S.W.2d at 210; Disney, 981 S.W.2d at 30. 
Aiken's excluded testimony would relate to representations made by Hasha to a third party, Aiken,
who was not involved in the cattle transaction. Additionally, Aiken's testimony would be
cumulative of other testimony from individuals with first-hand knowledge of the transaction. Both
Hasha and Rhoderick testified that Hasha was not an agent and acted independently in the
transaction. We hold that Eastern has not shown that the trial court erred in excluding Aiken's
testimony. Even if it was error to exclude Aiken's testimony, the decision was not harmful and did
not cause the rendition of an improper judgment. See Tex. R. App. P. 44.1(a)(1). Eastern's second
issue is overruled.

 In its third issue, Eastern contends that the trial court erred by excluding invoices
offered by Eastern and excluding testimony from Hasha regarding his guilty plea to the offense of
cattle theft. 

 Regarding Eastern's contention that the trial court improperly excluded Eastern
invoices, Bode notes that two of the documents about which Eastern complains were admitted at trial
as Bode's exhibits one and four. Eastern's complaint regarding these two documents is overruled. 

 The trial court has discretion to admit or exclude evidence. National Liab. & Fire
Co. v. Allen, 15 S.W.3d 525, 527-28 (Tex. 2000). To obtain reversal based upon the erroneous
exclusion of evidence, an appellant must show that the excluded evidence was controlling on a
material issue, was not cumulative of other evidence, and the error in excluding the evidence
probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); Williams
Distrib. Co. v. Franklin, 898 S.W.2d 816, 817 (Tex. 1995). 

 The other two invoices Eastern contends were improperly excluded are Eastern
shipping invoices that relate to the same cattle transaction and show essentially the same information
as other invoices admitted at trial. Because these invoices are cumulative of information admitted
during trial, we hold that the trial court did not err in excluding them from evidence. Additionally,
even if it was error to exclude them, such error did not cause the rendition of an improper judgment. 
See Tex. R. App. P. 44.1(a)(1).

 Eastern also contends that the trial court erred in disallowing testimony from Hasha
that he would not have pleaded guilty to cattle theft if he had in fact been acting as an agent for
Eastern. Admitted into evidence as Eastern's exhibits were documents relating to Hasha's guilty
plea, the judgment on his guilty plea, and the terms and conditions of his probation. The jury heard
testimony that Hasha pleaded guilty to cattle theft and that Bode was receiving restitution payments
from Hasha as a result of a plea bargain. The jury also heard testimony from Hasha that he did not
act as Eastern's agent. Consequently, the jury was informed that Hasha was personally convicted
of the theft and the jury had the ability to infer that Hasha would not have entered the guilty plea if
instead he had been acting as Eastern's agent. Again, such testimony from Hasha would have been
cumulative and would not have provided any new evidence. We hold that the trial court did not
abuse its discretion in refusing to allow Hasha to testify that he would not have entered the guilty
plea if he had been acting as Eastern's agent. Eastern's third issue is overruled.


Jury charge instruction

 In its fourth issue Eastern contends that the trial court erred in submitting a charge
to the jury that contained an improper instruction regarding agency. Eastern contends that the trial
court should have submitted an instruction to the jury stating that "the principal in that case must
have affirmatively held out an agent as possessing the authority or must have knowingly and
voluntarily permitted the agent to act in an authorized manner." Bode responds that although
phrased slightly differently, the jury instruction submitted addressing apparent authority was
substantially similar to the language requested by Eastern. 

 One of the instructions given stated, "To establish apparent authority, Bode must
show that Eastern either knowingly permitted Hasha to hold himself out as having authority or
showed lack of ordinary care in order to clothe Hasha with indicators of authority." We hold that
the instruction submitted adequately addressed the issue about which Eastern complains. The jury
was instructed that in order to find apparent authority, the principal, Eastern, must have either
knowingly permitted Hasha to hold himself out as having authority, or, through its lack of due care,
gave Hasha the indicators of authority. Eastern's fourth issue is overruled.

 The judgment of the trial court is affirmed.



 

 David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 14, 2002

Do Not Publish
1.   Indeed, the judgment provided Eastern a credit for any payments Hasha made to Bode.